[Civ. No. 27309.   Second Dist., Div. One.   Dec. 6, 1963.]

GLENN R. GARNER, Plaintiff and Respondent, v. JOUR-
NEYMAN BARBERS', HAIRDRESSERS', COSME-
TOLOGISTS' AND PROPRIETORS' INTERNATION-
AL UNION OF AMERICA, LOCAL NO. 573, AFL-CIO
et al., Defendants and Appellants.

Todd & Todd and Henry C. Todd for Defendants and Appellants.

F. Walter French and Joseph P. Argenta for Plaintiff and Respondent.

LILLIE, J.—Defendant Union and its secretary appeal from order overruling demurrer and granting preliminary injunction enjoining defendant union from delivering to any prospective customer of plantiff in front of his barber shop any check, chit or coupon to induce him to leave plaintiff and go to another barber shop upon the promise that it will give him a reduction of $1.00 on a haircut, or in any way making available to such person a cash discount or rebate on barbering services as an inducement to divert him from plaintiff's barber shop. (Order, December 17, 1962.) The matter was submitted on the verified complaint and affidavit of one Winchester and the counteraffidavit of defendant secretary Birch. No answer was filed by defendants until after notice of appeal.

The verified complaint alleges that plaintiff owns and operates the "Esquire Barber Shop" in Santa Monica; that defendant union is an association of in excess of 50 journeymen barbers and barber shop proprietors of whom some 20 operate barber shops in Santa Monica in direct competion with each other and plaintiff; that the State Board of Barber Examiners has fixed $1.29 as the minimum price for a haircut in the Santa Monica area; that plaintiff offers and sells a haircut for $1.35, 70 per cent of which he pays to the journeyman barber who cuts the hair; that the proprietor members of defendant union in the Santa Monica area have agreed with each other and the union to charge not less than $1.75 for a haircut—many charge $2.00—and, when any barber shop not a party to such agreement charges less than $1.75, to authorize the Union Executive Board to meet the competition by setting different minimum prices; that members of defendant

union walk up and down in front of plaintiff's barber shop during business hours and, as a prospective customer walks close enough to enter plaintiff's shop, approach him and give him a piece of paper stating—"SAVE $1.00 ON YOUR NEXT HAIRCUT" — to which is attached a "check" "good for ONE DOLLAR at a UNION BARBER SHOP (listed on the back) in this area towards a haircut" signed by the president and secretary-treasurer of the Barber's Union," and say in substance: "Take this to any barber shop . . . The nearest barber shop is three blocks in either direction"; that as a result many of plaintiff's prospective customers are detoured and diverted to barber shops operated by proprietor members of defendant union where they surrender the "checks" and receive haircuts for payment of either 75 cents or $1.00 each; that members of defendant union distributing these "checks" in front of plaintiff's shop have not by banner, placard, card, speech or gesture stated, indicated or suggested that there exists between plaintiff and the union any "labor controversy," "strike," "boycott," "effort to organize" or "labor dispute" or that they are seeking to persuade persons not to patronize plaintiff for any reason than to "Save $1.00" on their next haircut; that this plan, by which those proprietor members of defendant union operating barber shops near plaintiff offer to sell, and sell, a haircut to plaintiff's prospective customers for only 75 cents or $1.00 in cash, which is less than the minimum fixed by the state board ($1.29) and less than the cost to the proprietor union members (who have agreed to pay journeymen barbers in their shops not less than $1.225 for each haircut [70 per cent of the price to the patron]), has been carried out by defendant union for the purpose of injuring plaintiff as a competitor and destroying competition between him and the proprietor members of defendant union by underselling plaintiff and inducing his customers to leave his shop and get their haircut elsewhere for less than $1.35; and that said haircut, offered and sold at less than cost constitutes a "loss leader" within the meaning of the Unfair Practices Act (Bus. & Prof. Code, § 17030 et seq.) and an unfair trade practice.

Winchester's declaration alleges that, about to enter plaintiff's shop, he received two such "checks" and went with defendants to Angel's Barber Shop three blocks away where he had a haircut for which he surrendered to the barber the two "checks" and paid nothing else in cash or otherwise.

The countershowing of defendants was by way of affidavit executed by defendant union secretary Birch alleging: that barbers' wages are based directly upon the price paid by patrons for "the services rendered by the barber" thus, union members have an interest in the price charged by plaintiff; that the "activities described in the complaint" constitute a labor dispute over wages—since plaintiff has refused to comply with union conditions he is unfair to organized labor; that defendant union has found it necessary, when union wages are not paid to barbers for "the services rendered," to meet this competition by regularly accepted competitive methods; and that there is nothing done in front of plaintiff's shop except "peaceful picketing."

While ordinarily " '. . . an injunction should not be granted *pendente lite* upon a complaint alone where, in response thereto, a verified answer is filed explicitly and unequivocally denying the allegations of such complaint' (*Martin* v. *Danziger,* 21 Cal.App. 563, 564 [132 P. 284].) '' (*Moriyama* v. *Groshen,* 52 Cal.App. 215, 218 [198 P. 225]), when the preliminary injunction herein was issued defendants had filed no answer—the countershowing was by way of affidavit, which reflects no factual conflict concerning the "activities described in the complaint" but only seeks to justify them as a legitimate means of forcing plaintiff to pay union wages, and labels them "peaceful picketing." Moreover, it has been consistently held that "circumstances may exist in a case which justify the issuance of a temporary injunction notwithstanding the absolute denials in the answer" (*Monterey Club* v. *Superior Court,* 48 Cal.App.2d 131, 144 [119 P.2d 349]; *Lutz* v. *Western Iron & Metal Co.,* 190 Cal. 554 [213 P. 962]; *Metropolitan Laundry Co., Ltd.* v. *Greenfield,* 20 Cal.App.2d 246 [66 P.2d 722]; *Porter* v. *Jennings,* 89 Cal. 440 [26 P. 965]; *Kendall* v. *Foulks,* 180 Cal. 171 [179 P. 886]; and where the allegations of the complaint make out a strong case for injunctive relief the defendant cannot deprive the court of its power and discretion to issue the injunction merely by filing an answer and denials or an affidavit.

The main issue presented by appellants is whether the preliminary injunction interferes with the union's right to picket; they claim the right "to meet this [plaintiff's] competition" by "the activities described in the complaint," which constitute "peaceful picketing." (Affidavit of Birch; A.O.B., pp. 6, 11, 12.) It is plaintiff's contention that defend-

ants' activities constitute neither picketing nor the legitimate incident of picketing or advancing the union's position in a labor dispute, and that under the guise of picketing defendants, by illegal means, are trying to eliminate him as a competitor.

It is conceded by all that under the numerous cases cited by appellants, and *Messner* v. *Journeymen Barbers etc. International Union of America,* 53 Cal.2d 873 [4 Cal.Rptr. 179, 351 P.2d 347], the union has the right to peacefully picket plaintiff's place of business. However, plaintiff's objection is not to union picketing, but to the $1.00 rebates on haircuts defendant union is allowing to his prospective customers if they will leave his shop and patronize a competitor union barber shop in the area. The action does not seek to enjoin or interfere with the union's right to organize plaintiff's shop or to picket his place of business by walking up and down or standing in front and/or displaying the customary signs or by orally announcing that he is unfair to organized labor or is nonunion. In fact, the complaint reflects a complete absence of any activity in the nature of picketing—it alleges that although union members walk up and down in front of plaintiff's shop, they carry nothing and say nothing to indicate that any labor dispute or controversy exists—and there is nothing to distinguish them from other members of the public; that their sole activity, carried on for the purpose of diverting customers from plaintiff's shop and underselling him, is their distribution to plaintiff's prospective customers of rebate "checks" for which a haircut may be purchased at specified union shops in the area at a price below cost to them; and that even the "check," although issued by the president and secretary-treasurer of the Barber's Union, bears nothing to indicate a labor dispute—only that it is good for "ONE DOLLAR" towards a haircut at a "UNION BARBER SHOP" in the area "to better acquaint you with UNION BARBER-SHOP service and workmanship," that "YOUR UNION BARBER . . . will accept this check as partial payment for a haircut . . .;" and that "(UNION BARBERS ARE BETTER BARBERS)." Nor does the preliminary injunction say anything about picketing or walking up and down in front of plaintiff's place of business. It simply enjoins defendant union (the members of which include, as direct competitors of plaintiff, some 20 proprietors in that area) from delivering and making available to any of the plaintiff's prospective customers a $1.00 rebate on barbering serv-

ices as an inducement to divert them from plaintiff's barbershop to another; and leaves union members free to walk up and down in front of plaintiff's shop, and the union free to employ pickets to announce orally or by signs or cards or in any other legitimate manner that a labor dispute exists or plaintiff's shop is nonunion or unfair to organized labor.

Concerning a union's right to picket, the Supreme Court said in *Messner* v. *Journeymen Barbers etc. International Union,* 53 Cal.2d 873 [4 Cal.Rptr. 179, 351 P.2d 347] : "It is clear that 'a union may use the various forms of concerted action, such as strike, picketing, or boycott, to enforce an objective that is reasonably related to any legitimate interest of organized labor. . . . It is equally well settled that the object of concerted labor activity must be proper and that it must be sought by lawful means, otherwise the persons injured by such activity may obtain damages or injunctive relief.' (*James* v. *Marinship Corp.,* 25 Cal.2d 721, 728-729 [155 P.2d 329, 160 A.L.R. 900] and cases cited.)" (Pp. 876, 877.) Whereas in the *Messner* case, *supra,* the issue was whether "defendants' peaceful picketing was directed toward a proper object . . ." (p. 877), in the case at bar, assuming for the moment the object of their activities to be proper, the real question is whether it is sought by *lawful means*; if it is not, the injunction was properly granted. (*Messner* v. *Journeymen Barbers etc. International Union,* 53 Cal.2d 873 [4 Cal.Rptr. 179, 351 P.2d 347].) Thus, do union members, here indistinguishable from other members of the public, in their activity of offering to plaintiff's customers $1.00 rebates on haircuts if they will leave plaintiff and patronize a competitor union barber shop, depart from the employment of "lawful means"? It would appear that they do if the haircut at the competitor union shop costs the patron only the difference between the $1.00 rebate (paid by defendant union with union funds) and the fixed union price, and if the effect is to divert trade from or otherwise injure plaintiff as a competitor.

The complaint specifically alleges that by paying rebates of $1.00 on haircuts given to plaintiff's customers if they will leave him and patronize competitor union barbershops in the area, members of defendant union are offering a haircut for 75 cents or $1.00, an amount less than the minimum fixed by the state board ($1.29) and less than the cost of the haircut to them ($1.225 per haircut is paid by union proprietor members to the journeyman barber who cuts the hair), and

are thereby diverting numerous customers from plaintiff's shop to his union competitors and underselling him, injuring plaintiff as a competitor and destroying competition (Par. IX). Nowhere in their countershowing do defendants deny "the activities described in the complaint" or their effect on plaintiff; they even concede they are using them as a "competitive method" "to meet this (plaintiff's) competition," but attempt to justify them as "peaceful picketing."

A " 'Loss leader' " constituting an unfair trade practice under the Unfair Practices Act, "means any article or product sold at less than cost: . . . (c) Where the effect is to divert trade from or otherwise injure competitors." (Bus. & Prof. Code, § 17030.) Section 17044 makes it unlawful for any person to sell or use "any article or product as a 'loss leader' as defined in section 17030. . . ."

Relying upon section 16703, Business and Professions Code, appellants claim that only a commodity or product can be used as a "loss leader," and that labor (hair cutting) is not a commodity. While section 16703, Business and Professions Code in the chapter entitled "Restraint of Trade," with which we are not here concerned, excludes labor, skilled, or unskilled, as a commodity " [W]ithin the meaning of this chapter," pertinent sections in the following chapter entitled "Unfair Trade Practices," known as the Unfair Practices Act (Bus. & Prof. Code, § 17020 et seq.), with which we are concerned, make it clear that legislation denouncing unfair trade practices applies as well to the rendition of services and the output of a service trade. Accordingly, section 17024 provides: " 'Article or product' includes any article, product, commodity, thing of value, service or output of a service trade." In our determination whether a haircut can be a "loss leader" within the meaning of the Unfair Practices Act, we are concerned not with the actual work of the journeyman barber in cutting the hair, but with the purchase and sale of a haircut from a proprietor barber which clearly amounts to a "service or output of a service trade." Even defendants' counteraffidavit refers not to labor, but to "barbering services" and to "services rendered." Inasmuch as their plan, admittedly employed by defendants as a "competitive method" "to meet . . . [plaintiff's] competition" (affidavit of Birch), has injured plaintiff as a competitor and destroyed competition, the haircut which costs plaintiff's prospective customer but 75 cents or $1.00 at a competitor union barber shop is a "loss leader" constituting an unfair

trade practice. This activity, under the guise of peaceful picketing, is carried on by means made unlawful by the Unfair Practices Act, for which plaintiff is entitled to a preliminary injunction (*People* v. *Pay Less Drug Store*, 25 Cal.2d 108 [153 P.2d 9]; *Wholesale Tobacco Dealers Bureau* v. *National Candy & Tobacco Co.*, 11 Cal.2d 634 [82 P.2d 3, 118 A.L.R. 486]; *Kofsky* v. *Smart & Final Iris Co.*, 131 Cal.App.2d 530 [281 P.2d 5]), without bond. (Bus. & Prof. Code, § 17081.)

No issue is raised by appellants concerning that portion of the order overruling the demurrer; their answer was filed subsequent to the notice of appeal.

For the foregoing reasons the order is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied December 20, 1963, and appellants' petition for a hearing by the Supreme Court was denied January 29, 1964.