[Civ. No. 31943.    Second Dist., Div. Four.    Aug. 14, 1969.]

LOS ANGELES CHECK SELLERS ASSOCIATION, Plaintiff and Appellant, v. UNITED STATES NATIONAL BANK, Defendant and Respondent.

Gilbert & Malmuth for Plaintiff and Appellant.

Clarence W. Finley, Lawrence Kahan and Howard H. Taylor for Defendant and Respondent.

FILES, P. J.—The issue to be determined is whether the issuance of a money order, for a fee, by defendant bank can be a violation of the "sales below cost" and "loss leader" prohibitions of the Unfair Practices Act (Bus. & Prof. Code, §§ 17000, 17043, 17044).

The case is here on plaintiff's appeal from a judgment of dismissal entered after the trial court had sustained a general demurrer to a second amended complaint, without leave to amend further.

The complaint alleges in substance the following:

Plaintiff is a trade association whose members are licensed to sell and cash checks and money orders under the Check Sellers and Cashers Law (Fin. Code, § 12000 et seq.). The causes of action of the members have been assigned to plaintiff. Each of the plaintiff's members sells checks or money orders to the public through agents who are usually independent businesses such as liquor stores, drug stores, food markets and other retail establishments. The public pays fees ranging from 20 to 35 cents per check, depending upon its size. The selling agent retains a portion of that fee as his commission, and the remainder is remitted to the seller. The amount of that commission is determined by bargaining. In practice the seller receives an average of 12 to 15 cents per check.

In March 1966 the defendant, a national banking association, entered into the business of selling money orders to the public through agents in the Los Angeles area. Defendant offers its agents an arrangement whereby defendant receives only 10 cents of each fee and the agent keeps anything over that amount. It is alleged that the 10 cents received by defendant is less than its cost of doing business; that defendant has acted without regard for whether it made a profit and "with wanton and reckless disregard for the harmful injurious effect that said conduct would have upon competition in the money order industry," and that defendant's purpose was establishing new bank customers, including the agents themselves, from whom defendant might realize a profit through other aspects of the banking business.

It is further alleged that agents of other check sellers are deserting them in order to sell defendant's money orders at the more favorable commission rate.

The complaint prays an injunction and a recovery of damages.

No question has been raised as to the standing of plaintiff to maintain this action. The act authorizes a trade association to bring an action to restrain a violation or recover damages (Bus. & Prof. Code, § 17070).

Nor does defendant raise any contention that its status as a national banking association provides any immunity from the provisions of the state laws which are here invoked.

Before discussing the application of the Unfair Practices Act, it is necessary to take note of the important legal characteristics of the check selling business.

Under the Check Sellers and Cashers Law, persons such as plaintiff's members, who engage in the business of selling or cashing checks or money orders for compensation, are required to first obtain a license from the Commissioner of Corporations. (Fin. Code, § 12200.)

On the other hand, banks chartered under state or federal law are not subject to that statute. (Fin. Code, § 12100, subd. (a) ; see 41 Ops.Cal.Atty.Gen. 169.)

The funds received by a licensed check seller or its agents from the sale of a check or money order, equal in amount to the face value of the instruments, constitute trust funds, which must not be commingled with the assets of the licensee, and must be deposited promptly in a trust account in a bank. (Fin. Code, § 12300.3.)

A bank which issues its own money order is under no such limitation on the use of the proceeds. The parties here agree that the court may take judicial notice that so long as the money order is outstanding defendant has the use of the money which it has received. Even though each money order is outstanding for only a few days, a bank which issues them in large volume will have on hand at all times a substantial amount of money augmenting the free assets of the bank which can be loaned or otherwise invested profitably. Thus, to a bank, the use of a customer's money is a part of the consideration for the issuance of a check or money order, whereas a licensed check seller, under the limitations of the regulatory law, can receive no such benefit from the customers' money.

Although to the customer the money orders issued by defendant may be the exact equivalent of those sold by plain-

tiff's members, the legal and economic characteristics of defendant's business are quite different from the business of plaintiff's members.

The Unfair Practices Act makes it unlawful ''to sell any article or product at less than the cost thereof'' (Bus. & Prof. Code, § 17043) and ''to sell or use any article or product as a 'loss leader' '' (Bus. & Prof. Code, § 17044).

Section 17024 says '' 'Article or product' includes any article, product, commodity, thing of value, service or output of a service trade.''

The statute contains no definition of ''sell'' except to say that '' 'Sell' includes selling; offering for sale or advertising for sale.'' (Bus. & Prof. Code, § 17022.)

As a guide to interpretation the Business and Professions Code contains this:

''§ 17001. The Legislature declares that the purpose of this chapter is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition, by prohibiting unfair, dishonest, deceptive, destructive, fraudulent and discriminatory practices by which fair and honest competition is destroyed or prevented.

''§ 17002. This chapter shall be liberally construed that its beneficial purposes may be subserved.''

█ Defendant argues that it does not come within sections 17043 and 17044 because it does not ''sell'' anything. It is apparent from the definition of ''article or product'' that the statute is designed to cover a great variety of transactions other than the conventional sale of real or personal property. The broad definition of ''article or product'' compels a corresponding expansion of the word ''sell'' as used in sections 17043 and 17044. Thus although cutting hair is not ordinarily described as a sale, an offer to cut hair at less than cost may be an unlawful ''loss leader'' under section 17044. (*Garner* v. *Journeyman Barbers' etc. Union* (1963) 223 Cal.App.2d 101, 107 [35 Cal.Rptr. 693].)

In the ordinary meaning of the words, a money order is a ''thing of value,'' and the issuer of a money order renders a service by holding itself ready to pay the face value to the holder of the instrument whenever he presents it. Thus, giving to the statute the liberal interpretation which the Legislature has commanded, we must conclude that, within the meaning of the Unfair Practices Act, defendant is engaged in selling a product.

■ Defendant also makes the argument that this case involves not sales, but only a division of commissions between the issuer of the check and its agents. Defendant says in its brief:

"It cannot be too strongly emphasized that Respondent and Appellant are both selling money orders at exactly the same price to the consumer. Both charge the consumer exactly the same fee for issuing money orders. The only difference is that the Bank gives up a greater portion of the fee to its agents than Appellant's members give up to their agents."

Defendant fails to note that the gravamen of the complaint is what the defendant is alleged to be doing, not what the plaintiff's members are doing. Under the allegations of the complaint, and under the law, the food market or liquor store which issues defendant's money orders to the public acts as an agent of the defendant, who is the issuer of the money order. (See 41 Ops.Cal.Atty.Gen. 169, 174.) Thus defendant is engaged in the business of selling its money orders to the individual customers, not to the sales agent. The amount which the defendant allows to its sales agents as a commission is a part of defendant's costs. If the 10 cents which defendant allegedly nets after paying the sales commission is too little, then the sale is below cost.

The complaint alleges that it is not possible for defendant to operate profitably on what it nets from its agents, and that defendant operates its money order business at a loss except with a few large agencies. A violation of section 17043 or 17044 involves both a sale below cost and an unlawful purpose or effect. (See *Balzer* v. *Caler* (1938) 11 Cal.2d 663 [82 P.2d 19]; *Ellis* v. *Dallas* (1952) 113 Cal.App.2d 234 [248 P.2d 63].) The complaint alleges both elements and thus states a cause of action. Whether the defendant is selling at less than its cost, and whether the transactions have the unlawful purpose or effect referred to in the statute, are factual issues to be determined at a trial. The special legal and economic characteristics of the banking business, mentioned above, may have a bearing upon the truth of the allegations, but any discussion of that should await the proof.

The judgment is reversed with directions to overrule the demurrer to the complaint.

Jefferson, J., and Dunn, J., concurred.