[Civ. No. 10000. Fourth Dist., Div. One. Oct. 1, 1970.]

EUGENE R. ANDERSON et al., Plaintiffs and Respondents, v.
STATE BOARD OF CHIROPRACTIC EXAMINERS et al., Defendants
and Appellants.

COUNSEL

Thomas C. Lynch, Attorney General, and William L. Zessar, Deputy Attorney General, for Defendants and Appellants.

Ellman & Stein and Harry Ellman for Plaintiffs and Respondents.

OPINION

WHELAN, J.—The State Board of Chiropractic Examiners (Board) appeals from a judgment ordering issuance of a peremptory writ of mandate that Board set aside its decision to suspend for 60 days the chiropractic licenses of Eugene, Luverne and Wayne Anderson and Raymond Null (petitioners).

On January 26, 1967, petitioners placed in a Ventura County newspaper

a full-page advertisement which announced the opening of their chiropractic clinic in Oxnard and which read in part as follows:

"DISCOVER MODERN SCIENTIFIC CHIROPRACTIC

AND WHAT YOU SHOULD KNOW ABOUT IT

FREE X-RAY

AND ANALYSIS

NOW THROUGH FEBRUARY 3RD

"Because his wife's chiropractic treatment completely eliminated all traces of her severe arthritic condition, Mr. Roy Anderson has donated $1,000 to be used for free diagnostic X-rays at the Anderson and Null Chiropractic Clinic. All local people, rich or poor, young or old, are invited to take advantage of these free X-rays any time from now until Friday, February 3rd. There is no obligation whatsoever, and this free X-ray could let you know what is causing your trouble."

One section of the advertisement contained this language:

"The results of an X-ray analysis are explained thoroughly to the patient by the Doctor. At this point the Doctor tells the patient what is causing his discomfort, approximately how long it will take to correct it, and what it will cost."

The advertisement also stated that most leading insurance companies paid for chiropractic care, and that only those who might be helped by treatment would be accepted as patients.

On February 1, 1967, petitioners placed a full-page advertisement in a weekly publication distributed in East Ventura County. Basically the ad stated that plaintiffs offered a free X-ray and analysis from February 1 to February 12, that the X-ray could let the patient know what was causing his trouble, and that Mr. Roy Anderson had donated $1,000 to be used for free diagnostic X-rays in gratitude for the speedy recovery of his wife.

On February 12, 1967, petitioners ran a half-page newspaper advertisement which stated that the offer of a free X-ray and analysis would be continued through February 18 and that several hundred dollars of Mr. Anderson's donation were still available.

All three advertisements contained testimonials over the names of persons who told of the benefits they had received from chiropractic treatment. One of them said: "I first felt a little sceptical and was about to decide that this man had an easy living and was merely relieving my pocketbook of $6.00 each visit. . . ."

Roy Anderson is the father of petitioner Luverne Anderson.

On May 8, 1967, Board initiated administrative proceedings against petitioners alleging petitioners in their advertisements had represented and implied that the advertised services were normally rendered for a fee; that in publishing the advertisements they had violated Business and Professions Code section 651 which provides in pertinent part as follows: "It is unlawful . . . to offer to render or to render any service under the representation that the price or fee which is to be . . . charged . . . is at a discount, or under the representation that the price or fee which is to be . . . charged . . . is at a percentage or otherwise less than the average fee or price then regularly charged under like conditions by the person so licensed or by other persons for such . . . service. . . . The provisions of this section shall not be construed to . . . modify or affect in any manner any other provision of this division."[1]

After a hearing Board ordered the license of each petitioner suspended. The present action followed.

The trial court did not attempt to say that certain inferences drawn by Board were not supported by the evidence. Those inferences were that a patient was usually charged for the service offered to him as free, and hence the charge to the patient was less than the price regularly charged; although petitioners argue that such inferences might not be drawn.

Instead the trial court courageously held that the Legislature did not intend section 651 to prohibit the offer of free services and that such offers were not prohibited until the enactment of section 651.2 which became effective after the accusation against petitioners had been filed.[2] The court held the advertisements offered only free services and thus did not constitute offers of discounts for services as proscribed by section 651.

### CONTENTION ON APPEAL

The sole contention on appeal is that the court's determination that petitioners did not violate section 651 is incorrect as a matter of law.

### DISCUSSION

We face the problem whether an offer of free services is an offer to render them at a price less than the average price then regularly charged.

---

[1]Business and Professions Code section 652 makes violation of section 651 a misdemeanor and provides for suspension or revocation of the violator's license.

[2]Section 651.2, which was added by the statutes of 1968, provides: "No person licensed under this division or under any initiative act referred to in this division shall, in any advertisement, represent expressly or impliedly that he will furnish in

Petitioners contend their offer was not an offer by one chiropractor to do something for a lesser fee than another; that the real purpose of section 651 is to prevent competition or price-cutting among chiropractors; that the Legislature did not intend to prohibit the offer of free services until it enacted section 651.2; and that section 651 cannot be inferentially applied to advertisements for free services since the statute is of a penal nature.

The statute has been held not to be unconstitutionally vague, uncertain or indefinite. (*Barkin* v. *Board of Optometry*, 269 Cal.App.2d 714 [75 Cal.Rptr. 337]; *Cozad* v. *Board of Chiropractic Examiners*, 153 Cal. App.2d 249 [314 P.2d 500].)

No argument may logically be made that the adoption of section 651.2 discloses the Legislature did not intend by the enactment of section 651 to prohibit the offer of free services under a representation that the services so offered gratis were regularly charged for under like conditions. The enactment of section 651.2 rather indicates an intention to dot the "I's" and cross the "T's" for the benefit of those who professed to find the language of section 651 ambiguous.

 The real question is whether section 651 by its language does contain such a prohibition.

The administrative agency charged with its enforcement has interpreted the statute as containing such a prohibition. The administrative construction of a statute by those charged with its interpretation and enforcement is entitled to great weight, and courts will generally not depart from such an interpretation unless it is clearly erroneous (*Misasi* v. *Jacobsen*, 55 Cal.2d 303, 308 [10 Cal.Rptr. 850, 359 P.2d 282]), although such interpretations are not conclusive (*Joseph George, Distr.* v. *Dept. Alc. Control*, 149 Cal.App.2d 702 [308 P.2d 773]; *County of Los Angeles* v. *State Dept. Public Health*, 158 Cal.App.2d 425 [322 P.2d 968]).

If the advertisement is taken at its face value, the "diagnostic X-rays" are free only to the prospective patients; they do not represent services rendered gratuitously by the petitioners, because petitioners are paid for the X-rays and their services by the munificence of Mr. Roy Anderson.

 Only one inference is possible from the statements contained in the advertisements: that the prospective patient for a limited time is to

connection with the professional practice or business for which he is licensed any service or commodity or both, free or without cost."

receive a service for which the price charged—zero—is less than the average price then charged under like conditions.

Unquestionably the advertisements held out an offer to render a service under the representation that the price to be charged to the prospective patient is less than the average price then regularly charged under like conditions.

An offer to render services at no charge to the patient reasonably can be said to be an offer to render the service at a price less than the average fee or price regularly charged. In that respect the construction placed upon the statute by Board is not clearly erroneous and should be upheld.

We do not accept as valid the argument that the statute prohibits only offers to render services by the doctor at less compensation to him than he ordinarily charged; that since the advertisements showed the doctor was to be compensated from the fund created by Mr. Roy Anderson, and nothing indicates the compensation from that source would be less than usual, there has been no violation.

The purpose and intent of the statute are clear: They are to prevent the bringing in of prospective patients upon the representation the patients will receive services at less cost to them than is regularly charged, much in the manner that merchants bring in customers by advertising "loss leaders."

At the same time, we do not equate the purpose of statutes regulating fair trade practices in business with statutes regulating the professional conduct of those who are licensed in the healing arts.

Laws dealing with sales at below cost to the seller usually require that the sales be made with a specific intent or purpose with relation to the business of competitors. (*People* v. *Pay Less Drug Store,* 25 Cal.2d 108 [153 P.2d 9]; *Garner* v. *Journeyman Barbers' etc. Union,* 223 Cal.App.2d 101 [35 Cal.Rptr. 693]; *Page* v. *Bakersfield Uniform etc. Co.,* 239 Cal. App.2d 762 [49 Cal.Rptr. 46].)

Statutes providing for the enforcement of contracts for minimum prices on merchandise sold under a certain trade name are for the protection of the good will that the producer of such merchandise has established in the use of the trade name. (*Max Factor & Co.* v. *Kunsman,* 5 Cal.2d 446 [55 P.2d 177].)

However, the subterfuges that may be practiced in attempted evasions may sometimes be similar. Thus in *E. I. Du Pont De Nemours & Co.* v. *Kaufman & Chernick,* 337 Mass. 216 [148 N.E.2d 634, 636], the defendant took the position that by making a

gift of the fair-traded article in connection with the sale of another commodity, he was not selling the fair-traded article at less than cost. Of that claim the court said: "It is plain that in the case before us the delivery of Zerex to a customer in connection with and as a part of the sale of the tire was not, in fact or in law, a 'gift.' The money paid the defendant by the purchaser was paid not for the tire alone, but for both items. Legally and economically the transaction amounted to a combined sale of both the Zerex and the tire for a single price. E. R. Squibb & Sons v. Charline's Cut Rate, Inc., 9 N.J.Super. 328, 74 A.2d 354. See Sunbeam Corporation v. Klein, 32 Del.Ch. 65, 79 A.2d 603.

"The subterfuge of indicating on the sales slip that there was no charge for Zerex by way of the entry in the defendant's daily price change report of a change in price of Zerex from $3.25 a gallon to zero is not realistic."

Petitioners' contention is premised upon a literal construction of the phrase "price or fee" used in the code section. The statute would be absurd if it prohibited advertising the rendition of a service at a discount when the offer was to reduce the charge to one cent but not when the offer was to reduce the charge to nothing. ■ The purpose of a statute will not be sacrificed to a literal construction of the language used therein, particularly when such construction leads to an absurdity. (*Stockton School District* v. *Wright,* 134 Cal. 64, 68 [66 P. 34]; *Select Base Materials* v. *Board of Equalization,* 51 Cal.2d 640, 645 [335 P.2d 672]; *People* v. *Kuhn,* 216 Cal.App.2d 695, 698 [31 Cal.Rptr. 253]; *Meyer* v. *Board of Trustees,* 195 Cal.App.2d 420, 430 [15 Cal.Rptr. 717].) ■ Furthermore, as a practical matter the prospective patient would be an actual patient upon diagnosis of an ailment of which he could be relieved by chiropractic treatment. It must be assumed the petitioners intended the advertisements to have that effect. Thus, in the contemplated instances where the prospective patient would become an actual patient and receive an initial examination and X-ray free of charge, the fee for the total service rendered would be less than that regularly charged if the initial examination and X-ray were not free.

The judgment is reversed, with directions to the trial court to enter judgment in favor of Board.

Brown (Gerald), P. J., and Ault, J., concurred.

A petition for a rehearing was denied October 9, 1970, and respondents' petition for a hearing by the Supreme Court was denied November 25, 1970.