[L.A. No. 30887. Aug. 30, 1978.]

COUNTY OF SAN DIEGO, Plaintiff and Respondent, v.
ALFREDO G. MUNIZ, Defendant and Appellant.

## COUNSEL

Langford & Lane and James M. Lane for Defendant and Appellant.

Martin H. Kresse and Mark N. Aaronson as Amici Curiae on behalf of Defendant and Appellant.

Donald L. Clark, County Counsel, and Leonard W. Pollard II, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

MANUEL, J.—Plaintiff County of San Diego (County) brought an action in the Municipal Court for the San Diego Judicial District of San Diego County against defendant Alfredo G. Muniz to recover $1,763.02 paid to defendant as general assistance benefits. Judgment for the County followed a nonjury trial with the case submitted on the pleadings and the trial briefs. Defendant appeals.[1]

The facts are not in dispute. Between December 8, 1970 and July 31, 1974, the County afforded defendant general relief welfare benefits in the amount of $1,763.02. After July 31, 1974, defendant obtained employment which he held for more than a year. Alleging such employment and the receipt of wages, the County demanded that defendant reimburse it for the benefits. Defendant did not make repayment. The County filed a complaint for money damages alleging defendant's receipt of general welfare and his employment subsequent to the acceptance of benefits. Defendant's answer admitted the allegations but denied that he had acquired property within the meaning of California Welfare and Institutions Code section 17403.

---

[1]Defendant's first appeal was to the Appellate Department of the San Diego County Superior Court, which reversed the judgment for the County. The case then was certified to the Court of Appeal, which reinstated the decision of the municipal court. This court then granted a hearing.

Section 17403 provides in part: "If a person for the support of whom public moneys have been expended acquires property, the county shall have a claim against him to the amount of a reasonable charge for moneys so expended, and such claim shall be enforced by action against him by the district attorney of the county on request of the board of supervisors. . . ."

■ The issue before us, therefore, is the scope of the reimbursement intended by the Legislature in section 17403, and whether wages are "property" under that section such that the County, having paid general assistance, has a claim for reimbursement upon the undenied allegation that a former recipient has received wages.

The County argues that the word "property" in the statute means "everything which is the subject of ownership"[2] and that the reference to a specific sum of cash as property in Welfare and Institutions Code section 17409[3] is indicative of a legislative intent to treat wages as property. We do not find this argument persuasive. In *County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 639 [122 P.2d 526], it was held that ". . . in construing a remedial statute, like a law concerning the rendition of charitable aid to indigents and recovery therefor, reason must have its just proportion, and in interpreting the expressions employed, the court is free to study the history and purposes of the enactment and the previous state of the legislation on the subject, as well as other statutes *in pari materia* and the benefits sought to be provided."

Although we have found no reported cases which construe the word "property" for the purposes of section 17403, the prior common law rule, legislative history, and other statutory provisions of the Welfare and

---

[2]Black's Law Dictionary (4th ed. 1968) defines "property" as ". . . [the] dominion or indefinite right of use or disposition which one may lawfully exercise over particular things or subjects . . . . The word is also commonly used to denote everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal; everything which has an exchangeable value or which goes to make up wealth or estate."

Section 17409 (fn. 3, *post*) exempts cash in the amount of $50. This exemption is much less than that provided in sections 690.1 through 690.29 of the Code of Civil Procedure because section 690.19 apparently limits the exemption that can be claimed by a former welfare recipient as against a county attempting to execute upon a judgment, to the property that is exempt by reason of Welfare and Institutions Code section 17409.

[3]Section 17409 provides in part: "There shall be exempt from . . . execution on claims under Section 17403 against property acquired by persons for the support of whom public moneys have been expended all of the following *property*:

"(a) Cash to the amount of fifty dollars ($50)." (Italics added.)

Unless otherwise stated, all section references are to the Welfare and Institutions Code.

Institutions Code set out the context in which we must decide the issue. ■ At common law, in the absence of fraud in procuring relief, a recipient was under no obligation to repay the government agency disbursing the charity. (*Guardians of Pontypridd* v. *Drew* (1927) 1 K.B. 214; *Ogdon* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 192, 199 [113 Cal.Rptr. 206, 520 P.2d 1022].) The recovery provision in section 17403 for general assistance payments constitutes a statutory change to this long standing common law rule, and defines the extent of the County's authority to enforce payment. (*County of L. A.* v. *Security First Nat. Bank* (1948) 84 Cal.App.2d 575, 578 [191 P.2d 78]; see also *Ogdon* v. *Workmen's Comp. Appeals Bd., supra,* at pp. 199-201; *County of Santa Barbara* v. *Workers' Comp. Appeals Bd.* (1975) 53 Cal.App.3d 820, 826 [126 Cal.Rptr. 281]; *Webb* v. *Swoap* (1974) 40 Cal.App.3d 191, 196 [114 Cal.Rptr. 897].) ■ The legislative history of section 17403 itself, however, seems inconclusive as to the scope of the legislative change intended. The provision appears to relate originally to the Poor Law of 1901, providing that ". . . [i]n case such [poor, indigent, incompetent, or incapacitated] person shall be or shall thereafter become the owner of property real, person, or mixed, . . . the district attorney . . . [shall] cause the . . . support . . . of [the] person to be made out of such property . . . ." (Stats. 1901, ch. CCX, § 6, p. 637.) This language emerges subsequently in section 17403 as the requirement that a later acquisition of property may form the basis for a county's claim for reimbursement. (Stats. 1933, ch. 761, § 7, p. 2007.)

Given such language, and the statute's manifest purpose of promoting the repayment of past benefits, the County assumes section 17403 authorized reimbursement whenever benefits of any kind have been received; thus, a claim for reimbursement would be triggered upon a former recipient's acquisition of a benefit, no matter how necessary for his self-support, with section 17409 merely providing minimal limitation upon the ability to reach that property.

This result seems neither intended by the language of section 17403 nor required by the other aid provisions of the Welfare and Institutions Code. Had the Legislature intended such a construction, it seems reasonable that it would have stated its purpose clearly as it did in section 17300[4]

---

[4]Section 17300 provides in pertinent part: "*All aid rendered by the county under this part shall be a charge* against the responsible relative or relatives of the recipient thereof, and the county rendering aid shall be entitled to reimbursement therefor . . . . If in the opinion of the board of supervisors pecuniary ability [on the part of the relatives] existed when the aid was given, and exists when the matter comes before the board of

where the responsibility for indigents was made an absolute charge on the relatives. We note, moreover, in the case of *County of Los Angeles* v. *Read* (1961) 193 Cal.App.2d 748, 752 [14 Cal.Rptr. 628], the Court of Appeal in reversing judgment granting reimbursement to a county, observed: "Section 2603 [the predecessor to § 17403] explicitly and exclusively pertains to after-acquired property—not to property in the possession and control of a medically indigent person before treatment commences. Here there was no finding of fact that the property was acquired after treatment was rendered, *nor any finding of fact as to the character of the property,* and since such findings are essential to an action under the code section, that part of the judgment which rests on section 2603 . . . is reversed." (Italics added.)

Indeed, under the theory that a claim arises as soon as any property is received, a former recipient who is paid wages for one hour's work or a marginal wage earner could immediately face a potentially burdensome claim. It is apparent that this outcome, in conjunction with the minimal exceptions provided in section 17409, could operate as a strong disincentive for welfare recipients to seek gainful employment.

The County's theory in addition leads to anomalous results. Section 17111, for example, provides that an "applicant or recipient [of general assistance] shall be permitted to retain . . . the tools of his trade . . . and an automobile of reasonable value needed to seek or maintain employment in order to enable . . . [him or her] to become self-supporting." Since a county's claim for reimbursement arises upon the acquisition of after-acquired property (*County of Los Angeles* v. *Read, supra,* 193 Cal.App.2d 748; *County of Santa Barbara* v. *Workers' Comp. Appeals Bd., supra,* 53 Cal.App.3d 820), it would seem anomalous in light of section 17111 that a county's claim could arise under section 17403 upon the acquisition by a former recipient of an automobile needed to maintain employment.

Such anomalies also appear unintended by the Legislature in light of the other provisions of the Welfare and Institutions Code and the purposes it seeks to achieve. Furthermore, although all aid rendered by the county is a charge against "the responsible relative" of the recipient (§ 17300; see *Dept. of Mental Hygiene* v. *McGilvery* (1958) 50 Cal.2d 742 [329 P.2d 689]), the statute requires pecuniary ability to reimburse on the part of the relatives, both at the time the aid was rendered and when the matter comes before the board of supervisors. Clearly, these provisions

---

supervisors, the board shall request the district attorney . . . to proceed against such responsible relative or relatives." (Italics added.)

indicate that the legislative purpose is not to obtain reimbursement of all county moneys expended.

We observe, moreover, that the Legislature with regard to the existence and the extent of the recipient's liability to reimburse, neither provided for any minimal standard to be used to determine when receipt of wages would trigger the obligation as it has for responsible relatives (§ 17300), nor in sections 17400-17409, has it provided that any stated level of income be exempt from execution on claims arising under section 17403, as, for example, it has for cash, personal effects, and insurance policies under section 17409. This silence indicates that the matter of earnings was never addressed by the Legislature.[5] Because in the field of assistance benefits, there has appeared to be a distinction between recurring income and nonrecurring income, this silence of the Legislature insofar as it would authorize the County to seek reimbursement simply because the recipient has become gainfully employed, would appear purposeful. (See *Ogdon* v. *Workers' Comp. Appeals Bd., supra,* 11 Cal.3d 192, 202-204.)

The expressed policy of division 9 providing the poor relief is ". . . the solution and prevention of individuals and families who could otherwise be productive and self-supporting members of society from becoming or remaining public assistance recipients . . ." (§ 10650), and welfare services are to be provided in such a manner as "to encourage self-respect, self-reliance, and the desire to be a good citizen, useful to society" (§ 10000). ■ The provisions of law relating to a public assistance program are to be liberally interpreted to effect their stated objects and policies. (§ 11000; see *Taylor* v. *McKay* (1975) 53 Cal.App.3d 644, 650 [126 Cal.Rptr. 204].)

■ These policies suggest that in drafting these provisions, a primary concern of the Legislature was to encourage the recipient to be self-supporting. Perhaps, another apparent purpose was to prevent unjust enrichment of the recipient at the expense of the taxpayer, by permitting the retention without repayment of the benefits conferred by the county even when the recipient becomes able to repay such benefits. (Graham, *Public Assistance: The Right to Receive; The Obligation to Repay* (1968) 43 N.Y.U.L.Rev. 451, 475-477; Baldus, *Welfare as a Loan: An Empirical*

---

[5] It will be noted that the only exemptions available to execution by the County after judgment in a case to recover support moneys, are those contained in section 17409. (Code Civ. Proc., § 690.19.) Accordingly, the Code of Civil Procedure exemptions relating to earnings (Code Civ. Proc., § 690.6) would not be applicable in such a case. Thus, the entirety of wages could be taken for past support, a result obviously not contemplated by the Legislature and contrary to the expressed purposes of division 9.

*Study of Recovery of Public Assistance Payments in the United States* (1973) 25 Stan.L.Rev. 123, 180-184.) However, it would seem incongruous that the Legislature would intend in section 17403 to allow reimbursement inconsistent with the legislative scheme expressed in the code and the statutory history, where such result would produce the anomalous results mentioned earlier.

The requirement that section 17403 affects only after-acquired property manifests a legislative intent that the property acquired forms the res out of which the former recipient is to reimburse the county. Wages, however, represent earnings used by the former recipient to ". . . maintain or achieve . . . self-care or self-support" (§ 10001). Therefore, to the extent wages are used to support the person earning them, there can be no res out of which to satisfy the County's claim. If a wage earner after meeting his needs, has no ability to repay the County for benefits conferred, he is then in the same position as he was when he was a recipient with respect to being able to reimburse the County, that is, there is still no res out of which to satisfy a claim.

Wages, as such, may not conceptually differ from various other forms of property; however, money earned as wages is distinguishable from other forms of property in that for most former recipients, it is their primary, if not sole means of self-support. Depriving them of this support is contrary to the expressed policies to be furthered by the Welfare and Institutions Code. If, after meeting the requirements of self-support, the recipient then has property in the form of cash or other accumulations, it is very likely that section 17403 then may trigger a claim for repayment.

This construction avoids the anomalous consequences demonstrated earlier, encourages the welfare recipient to seek and maintain employment, and effectuates the legislative contemplation that acquired property will be susceptible to the county's claim. ■ It is settled that a statute is to be construed in such a way as to render it "reasonable, fair and harmonious with [its] manifest [legislative] purposes. . . ." (*Dickey* v. *Raisin Proration Zone No. 1* (1944) 24 Cal.2d 796, 812 [151 P.2d 505, 157 A.L.R. 324]), and the literal meaning of its words must give way to avoid harsh results and mischievous or absurd consequences. (*County of Los Angeles* v. *Frisbie, supra,* 19 Cal.2d 634, 639; *Silver* v. *Brown* (1966) 63 Cal.2d 841, 845 [48 Cal.Rptr. 609, 409 P.2d 689]; *Anderson* v. *State Bd. of Chiropractic Examiners* (1970) 11 Cal.App.3d 963, 969 [90 Cal.Rptr. 152].)

█ Accordingly, "property" in section 17403 does not include wages per se,[6] but only includes any surplus retained by the recipient after meeting the support needs of himself and his family. Until that level is reached, the County's claim does not arise.[7] Although there would normally be a rebuttable presumption that the County indeed had made such a finding before initiating a claim against defendant, due to the paucity of the record in the present case and the absence of interpretation of section 17403, we cannot make such an assumption here. (*County of Los Angeles* v. *Read, supra,* 193 Cal.App.2d 748.)

Accordingly, we reverse the judgment and remand this cause for proceedings consistent with this opinion.

Bird, C. J., Tobriner, J., Mosk, J., Clark, J., Richardson, J., and Newman, J., concurred.

---

[6]Wages, it is to be noted, are also differentiated from passive forms of recurring income by virtue of their incentive value, a characteristic lacking from income which is not dependent for its generation on the individual's own efforts.

[7]The Legislature may wish to give further attention to this area, it being within a context where additional structure could be of benefit. Indeed, in its 1969 study of welfare expenditures, the California Senate Interim Committee on Social Welfare recognized at page 41 of their report that "The remaining elements of the general relief program [including sections 17400-17409], however, remain unstructured and highly individualized from county to county." (Rep. of Subcom. of Gen. Research, A study of Welf. Expenditures, 21 Sen. Interim Com. Rep. (1969) No. 15, Social Welfare, pp. 39-41.)