[No. E005959. Fourth Dist., Div. Two. Jan. 17, 1990.]

ROBERT CARROLL et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

## COUNSEL

Fogel, Feldman, Ostrov, Ringler & Klevens, Jerome L. Ringler, Marvin Benson and Ronald J. Fomalont for Plaintiffs and Appellants.

Joseph A. Montoya, Anthony J. Ruffolo, Robert W. Vidor, Larry R. Danielson, Faith I. Mitchell, Fidler & Bell and Paul J. Burkhart for Defendants and Respondents.

## OPINION

**DABNEY, J.**—Robert Carroll and Michelle Jensen (Plaintiffs) have appealed from judgments awarding costs and fees to the County of Riverside (County) in the sum of $6,097.25 and awarding costs and fees to the State of California (State) in the sum of $3,680. The courts awarded the costs and fees after granting each governmental entity's motion for summary judgment.

### ISSUES

Plaintiffs allege that each trial court abused its discretion in finding that Plaintiffs' action was not prosecuted in good faith and with reasonable cause and in awarding defense costs to the County and State under Code of Civil Procedure section 1038.[1] Plaintiffs also ask this court to determine whether the trial court, in awarding defense costs to the State, demonstrated undue prejudice against Plaintiffs' attorneys of record.

### FACTS

On May 2, 1987, Plaintiffs were injured while riding a motorcycle which collided with an automobile driven by Teresa Carroll (no relation to plain-

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

tiff Carroll) at the intersection of Adams and Garfield Streets (the intersection) in the City of Riverside (City).

*Complaint*

Plaintiffs filed the summons and complaint nunc pro tunc December 24, 1987. The complaint alleged that the City, State and County each "owned, managed, operated, maintained, controlled, leased and supervised the intersection of Adams and Garfield streets in the City of Riverside . . . ."

*County of Riverside*

Each plaintiff submitted a timely claim to the County, contending that the intersection constituted a dangerous condition of public property. The County rejected Robert Carroll's claim on August 7, 1987 and Michelle Jensen's claim on August 19, 1987. Both notices of rejection stated that the claims were rejected because the incident did not occur within the County's jurisdiction.

On November 4, 1987, Plaintiffs' attorneys were sent a letter from Ron De Laby of Professional Risk Management, Inc., liability claims administrator for the County. De Laby stated in the letter the incident did not occur within the jurisdiction of the County and that Adams and Garfield streets were neither owned nor maintained by the County. De Laby offered to provide any further information Plaintiffs needed to exclude the County from litigation in the case. Finally, the letter notified the Plaintiffs that if they pursued the litigation against the County, the County would seek to recover all costs of defense under sections 128.5 and 1038. Thereafter, Plaintiffs filed their unverified complaint.

County was served with a copy of the summons and complaint on February 17, 1988. On March 11, 1988, the County propounded requests for admissions to Plaintiffs in which Plaintiffs were asked to admit that the intersection was within the Riverside city limits and that it was not owned, controlled, or maintained by the County of Riverside. Plaintiffs responded that they could not admit or deny the requests due to the ongoing nature of investigation. Plaintiffs therefore denied most of the requests.

On March 11, 1988, the County propounded interrogatories to Plaintiffs. The interrogatories requested a statement of facts upon which Plaintiffs based their responses to the requests for admissions. The interrogatories also requested a statement of all contentions and facts upon which Plaintiffs predicated their claim against the County. Plaintiffs responded only that their investigation and discovery were continuing.

Before Plaintiffs served their responses to the interrogatories, counsel for Plaintiffs spoke with counsel for the County on April 15, 1988. In this conversation, Plaintiffs' counsel was again informed that the County had no jurisdiction over the intersection and should be dismissed from the lawsuit. Plaintiffs were informed that the County would seek an award of costs and fees incurred in the defense of this litigation.

On April 26, 1988, counsel for the County wrote a letter to Plaintiffs' attorneys again requesting to dismiss the County from the lawsuit. The letter again informed Plaintiffs that the County would seek an award of costs and attorney's fees incurred in the defense of the action.

Nine months after Plaintiffs had first been put on notice of the County's lack of jurisdiction, Plaintiffs propounded interrogatories to the County on May 20, 1988. None of the interrogatories attempted to determine whether the County had any jurisdiction over the intersection. On July 1, 1988, the County responded to Plaintiffs' interrogatories by stating that the information requested regarding the intersection was unknown to it.

On July 12, 1988, the County filed a motion for summary judgment. Plaintiffs then attempted to conduct discovery to determine whether the County controlled or owned the intersection. Plaintiffs directed a request for admissions to the codefendant City, but did not serve it on the City until August 1, 1988. In the request for admissions, Plaintiffs sought to determine if the County had any factual authority over the intersection.

The County's motion for summary judgment came on for hearing September 7, 1988, before the Honorable William H. Sullivan. The court granted the County's motion for summary judgment and awarded fees and costs to the County in the amount of $6,097.25. The formal order was signed September 19, 1988.

*State of California*

Plaintiffs each filed a claim with the State Board of Control on August 12, 1987. Plaintiffs' claims were denied. The State was served with the summons and complaint on February 17, 1988.

Before the State filed its answer, Faith I. Mitchell, an attorney representing the State, contacted Plaintiffs' attorney Mark Allen Kleiman by telephone. Mitchell advised Kleiman that the State did not own, control, maintain or have any other legal obligation concerning the intersection and that Mitchell would provide Kleiman with a signed declaration to that effect. A letter confirming this representation was sent to Kleiman. Plaintiffs' counsel

responded with a strident letter, dated March 16, 1988, again requesting that the State's attorney conduct discovery on behalf of the Plaintiffs before Plaintiffs would consider dismissing the State. A letter dated April 4, 1988, was sent to Kleiman, enclosing a signed declaration of Dick Beckley, an associate transportation engineer with the right-of-way engineering section, department of transportation, district 8, San Bernardino, California. Beckley stated under penalty of perjury that the State did not have a proprietary interest in the intersection. His declaration further stated that the State was not a party to any contractual agreements related to the accident site, either at the time of the accident or when the declaration was signed, nor was the intersection under control or maintenance of the State. A renewal of the request that the State be dismissed was made, along with another warning the defense costs would be sought under section 1038.

Plaintiffs' counsel, in a letter dated April 8, 1988, indicated that he knew the State had no ownership or control of the intersection, but he did not know what role the State may have played in assisting the City to determine the proper placement of traffic control devices. The letter invited the State to conduct discovery on behalf of Plaintiffs.

Plaintiffs served requests for admissions on the City on March 29, 1988. On June 24, 1988, the City served its verified responses in which it unequivocally admitted that within the past 10 years the State had neither owned nor controlled the intersection, nor rendered any consultant services concerning traffic flow or traffic patterns.

On May 20, 1988, Plaintiffs' counsel propounded interrogatories to the State, seeking information regarding maintenance, repair, inspection and complaint history for the intersection. On June 9, 1988, the State sent another letter to Plaintiffs' counsel requesting dismissal of the State and again warning it would seek defense costs. On June 24, 1988, the State served its verified responses, indicating that it had no knowledge of the maintenance of the intersection and reiterating its position that it did not own, control, maintain or otherwise operate the intersection.

On August 2, 1988, the State filed its motion for summary judgment. The motion was heard by Judge Victor Miceli on September 15, 1988, and it was granted. The trial court ordered Plaintiffs and their counsel to pay $3,680 to the State pursuant to section 1038.

## DISCUSSION

A trial court's exercise of a discretionary power will not be disturbed except for an abuse of discretion. (*Denham* v. *Superior Court* (1970) 2

Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193].) The burden is on the appellant to show an abuse thereof. *(Ibid.)* Therefore, we must determine if there is any substantial evidence to support the trial court's finding. *(Overton* v. *Vita-Food Corp.* (1949) 94 Cal.App.2d 367, 370 [210 P.2d 757].)

■ Section 1038 provides: "(a) In any civil proceeding under the California Tort Claims Act . . . the court, upon motion of the defendant . . . shall, at the time of the granting of any summary judgment, . . . determine whether or not the plaintiff, . . . brought the proceeding with reasonable cause and in the good faith belief that there was a justiciable controversy under the facts and law which warranted the filing of the complaint . . . . If the court should determine that the proceeding was not brought in good faith and with reasonable cause, an additional issue shall be decided as to the defense costs reasonably and necessarily incurred by the party or parties opposing the proceeding, and the court shall render judgment in favor of that party in the amount of all reasonable and necessary defense costs, in addition to those costs normally awarded to the prevailing party."

This requirement of "good faith with reasonable cause," essentially serves to limit a party's actions. A tort action may not be brought unless both conditions are met. *(Curtis* v. *County of Los Angeles* (1985) 172 Cal.App.3d 1243, 1252 [218 Cal.Rptr. 772].) This requirement encompasses not only the filing of an action, but also its continued maintenance. *(Ibid.)*

■ Plaintiffs acknowledge that the complaint must be filed and maintained against the County and State in "good faith and with reasonable cause." Plaintiffs believe they did so. They argue that although the accident occurred in the City, the County or State may be liable for injuries created by a dangerous condition on property they control or on property made dangerous by a condition on adjacent property they own or control. (Van Alstyne, Cal. Government and Tort Liability Practice (Cont.Ed.Bar 1980) § 3.7, pp. 184-185 and the cases cited therein.) Plaintiffs claim that the issue of joint control cannot be resolved without a factual inquiry *(Mamola* v. *State of California* ex rel. *Dept. of Transportation* (1979) 94 Cal.App.3d 781, 792 [156 Cal.Rptr. 614]), and that joint control is not easily determined by merely examining public records.

Plaintiffs argue that they made an appropriate and good faith effort through the use of discovery procedures to determine if the County or the State exercised any hidden control at or near the intersection. Plaintiffs claim they proceeded with their discovery to determine this issue by filing interrogatories on the County on May 20, 1988. Further, on July 18, 1988, Plaintiffs noticed the depositions of responsible officials of the State, County and City to determine who was legally responsible for the alleged dangerous

condition at the intersection. On August 1, 1988, Plaintiffs served a second set of requests for admissions to the City, addressing the issues raised by the County. Finally, on August 2, 1988, Plaintiffs served additional interrogatories and demands for production of documents on the City, County and State. Plaintiffs argue, by implication, that they attempted to make a good faith effort to determine through discovery procedures whether either the State or the County could in any manner be held responsible for the accident at the intersection.

Plaintiffs' counsel fails to recognize that the determination of whether a party should be named in the original filing of a lawsuit is not predicated upon the attorney's belief that his client's interests are protected by naming every conceivable defendant, but whether the plaintiff has *initially* ". . . brought the proceeding with reasonable cause and in the good faith belief that there was a justiciable controversy under the facts and law which warranted the filing of the complaint . . . ." (§ 1038, subd. (a).)

■ Section 1038 requires that before a civil action is filed or maintained, two conditions are to be met. The first condition is that the action be brought in "good faith." The term "good faith" defies precise definition. (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 495 [213 Cal.Rptr. 256, 698 P.2d 159].) "[It] is a question of fact in each case." (*Critz* v. *Farmers Ins. Group* (1964) 230 Cal.App.2d 788, 796 [41 Cal.Rptr. 401, 12 A.L.R.3d 1142].) Encompassed within the legal definition of "good faith" is the equitable principle of fairness. (Cf. *River Garden Farms, Inc.* v. *Superior Court* (1972) 26 Cal.App.3d 986, 996-998 [103 Cal.Rptr. 498].)

The second condition is that the action be brought "with reasonable cause." We believe the terms "reasonable cause" and "probable cause" to be synonymous. (See *Curry* v. *Superior Court* (1970) 7 Cal.App.3d 836, 847 [86 Cal.Rptr. 844].) "Reasonable cause" is defined as ". . . whether any reasonable attorney would have thought the claim tenable . . . ." (*Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 886 [254 Cal.Rptr. 336, 765 P.2d 498].) In *Sheldon* the defendant appealed from a judgment awarding damages to the plaintiff in a malicious prosecution case. The trial court had given the "probable cause" issue to the jury for decision. The Supreme Court reversed the jury award, holding that the "probable cause" element of the tort calls on the court to make an objective determination of the reasonableness of the defendant's conduct in initiating the lawsuit. (*Ibid.*)

We believe that the case law on the tort of malicious prosecution is analogous, instructive and persuasive authority for the proper resolution of

this appeal.[2] "In recent years, the Legislature has taken several steps . . . enacting legislation to facilitate the early weeding out of patently meritless claims . . . to permit *the imposition of sanctions* . . . *against both litigants and attorneys*—for frivolous or delaying conduct. (See, e.g., Code Civ. Proc., §§ 437c, 1038, 128.5, 409.3.)" (*Sheldon Appel Co., supra,* 47 Cal.3d at pp. 873-874.)

The definition of the probable cause element is an objective standard determining ". . . the defendant's belief in, or knowledge of, *a given state of facts,* and not . . . the defendant's belief in, or evaluation of, *the legal merits of the claim.*" (*Sheldon Appel Co., supra,* 47 Cal.3d at p. 879, original italics.)

Stated another way, "when, . . . the facts known by the attorney are not in dispute, the probable cause issue is properly determined by the trial court under an objective standard; it does not include a determination whether the attorney subjectively believed that the . . . claim was legally tenable. [Citations.]" (*Sheldon Appel Co., supra,* 47 Cal.3d at p. 881.)

Furthermore, the probable cause element does not place an improper or unjustified hardship on these plaintiffs. The defendants have an " 'interest in freedom from *unjustifiable* and *unreasonable* litigation.' [Citation.]" (*Sheldon Appel Co., supra,* 47 Cal.3d at p. 882, original italics.)

At the minimum, this term requires that the Plaintiffs' attorney have some articulable fact or facts to conclude that a particular person or entity should be *initially* included in the lawsuit as a party-defendant. Not only did Plaintiffs fail to present any basis to the trial courts of State or County "control" in or near the intersection in dispute, but a review of the discovery record indicates that Plaintiffs never raised the question of adjacent property "owned or controlled" by the County or State during the course of this litigation.[3]

---

[2] The court in *Winick Corp.* v. *County Sanitation Dist. No. 2* (1986) 185 Cal.App.3d 1170, 1176-1177 [230 Cal.Rptr. 289] observed that section 1038 provides the sole means by which a governmental entity may be protected from bad faith litigation brought by overzealous counsel.

The court in *Curtis* v. *County of Los Angeles* (1985) 172 Cal.App.3d 1243, 1250 [218 Cal.Rptr. 772] noted that subdivision (c) of section 1038 establishes that any party seeking defense costs under that section waives any right to sue for malicious prosecution. The court explained that subdivision (c) ". . . show[s] a recognition by the Legislature that the relief afforded by [subdivision (c)] is so similar to a malicious prosecution cause of action that an aggrieved party can only seek redress by one method or the other, but not both." (*Ibid.,* italics omitted.)

[3] The facts in this case are distinguishable from those in *Atchison, Topeka & Santa Fe Ry. Co.* v. *Stockton Port Dist.* (1983) 140 Cal.App.3d 111 [189 Cal.Rptr. 208]. In *Atchison,* the appellate court reversed the trial court's award of sanctions in the form of attorney's fees and costs to the Stockton Port District, a governmental entity. In *Atchison,* the plaintiff named

The record is replete with valid demands by both defendants at an early stage of the proceedings that they be dismissed as improper parties to the lawsuit. Those demands fell on deaf ears. The County had assured Plaintiffs' counsel before the complaint was filed that it had no control over the intersection. By the time Plaintiffs propounded their interrogatory responses to the County on May 11, 1988, nine months had passed since Plaintiffs had been put on notice in the County's rejection of their claim that the County had no jurisdiction over the intersection. The State, through a declaration under penalty of perjury, informed Plaintiffs that it did not control or have any other relationship to the intersection.

We find nothing in the record that even hints that Plaintiffs had any facts upon which to base a good faith belief or reasonable cause that either the County or the State "owned, managed, operated, maintained, controlled, leased, and supervised the intersection . . . ." The only reference Plaintiffs made to any investigation came in argument before the court on September 7, 1988. Counsel for Plaintiffs stated that he had hired an outside expert to advise him concerning the status of the intersection. Even then, not one fact was presented to either court through affidavits or declarations of that expert as to what he had uncovered in his investigation of the County's or State's possible liability in this dispute. (See, e.g., *Frank Annino & Sons Construction, Inc.* v. *McArthur Restaurants, Inc.* (1989) 215 Cal.App.3d 353, 359 [263 Cal.Rptr. 592] [upholding award of sanctions under section 128.5 when record disclosed that plaintiff never had any evidence to support its claims before naming individual as a defendant and never attempted to discover evidence to support those claims].)

Plaintiffs have failed to justify the initial filing of the complaint against these defendants and continued to maintain the lawsuit against the public entities with a certain arrogance. Plaintiffs have attempted to shift the burden from themselves to defendants to determine whether defendants had any possible liability.

We find that substantial evidence supports the trial courts' awards of costs and attorney's fees against Plaintiffs. We cannot find an abuse of discretion by either trial judge in their orders. The action was not brought or maintained against these defendants in "good faith" or with "reasonable cause."

---

the Port District as a defendant in plaintiff's action for damages to real and personal property sustained when a levee failed. The *Atchison* court noted that the plaintiff named the Port District only to avoid the stringent statute of limitations. The plaintiff did not serve the complaint on the Port District and informed the Port District it would take no further action against the Port District unless discovery against other defendants disclosed a basis for the Port District's liability. Here, in contrast, Plaintiffs sought to require the State and County to incur expenses in conducting discovery for Plaintiffs.

## Trial Court Remarks

Plaintiffs argue that Judge Miceli evidenced "potential prejudice"[4] against their counsel, citing from a reporter's transcript in an unrelated appeal in Ramsey v. City of Elsinore. The Ramsey case was not designated part of the record in this appeal; however, we take judicial notice of it under Evidence Code sections 459, subdivision (a) and 452, subdivision (d), subpart (1). We do not deem the material noticed to be of "substantial consequence to the determination of the action." (Evid. Code, § 459, subd. (c).) Thus, we do not deem it necessary to provide the parties an opportunity to present information on the materials of which we take notice. (Evid. Code, § 455, subd. (a).) Based on the facts of this case, it would appear that the statement was fair comment. Counsel for Plaintiffs would do well to consider whether the remarks of the trial court were "potential prejudice" or whether they were sage advice to Plaintiffs' counsel. Without dispute, they were the latter.

### DISPOSITION

The judgments are affirmed. Each respondent to recover its costs on appeal.

McDaniel, J., and Hollenhorst, Acting P. J., concurred.

---

[4] The court stated: "The Court finds that it appears that the firm of Fogel, Feldman, Ostrov, Ringler & Klevens has—makes it a practice of naming not only the adverse driver, if it's a motor vehicle situation like this, but they also name the city, county and the state.

"And after repeated requests of the governmental entity that is not involved, the firm persists in keeping the governmental agencies in the lawsuit, requiring it to incur expenses, including attorney's fees and [costs] which it should not do.

"The Court finds that it is nonreasonable for the Plaintiff's attorney to expect to wait until the very last moment, and the Court suspected possibly one of the reasons why all these defendants are named is that there may be the possibility that one or more of them may be wishing to make a contribution, whether it be substantial or otherwise, even though there is no liability on their part.

"That's the ruling of the Court."