[No. C021360. Third Dist. Mar. 28, 1996.]

JUSTINE HALL, Plaintiff and Respondent, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, Defendant
and Appellant.

**COUNSEL**

Rust, Armenis, Schwartz, Lamb & Bills, Fred A. Schwartz, Ronald R. Lamb, Greines, Martin, Stein & Richland, Martin Stein, Timothy T. Coates and Alison M. Turner for Defendant and Appellant.

Ralph D. Drayton for Plaintiff and Respondent.

**OPINION**

**BROWN, J.**—Code of Civil Procedure section 1038[1] authorizes an award of defense costs in any civil proceeding under the California Tort Claims Act

---

[1]Section 1038 reads, in part: "In any civil proceeding under the California Tort Claims Act or for express or implied indemnity or for contribution in any civil action, *the court, upon motion of the defendant . . . shall, at the time of the granting of any summary judgment, . . . determine whether or not the plaintiff, . . . brought the proceeding with reasonable cause and in the good faith belief that there was a justifiable controversy under the facts and law which warranted the filing of the complaint, . . .* If the court should determine that the proceeding was not brought in good faith and with reasonable cause, an additional issue shall be decided

"If the court should determine that the proceeding was not brought in good faith and with reasonable cause, . . ." In the context of the Tort Claims Act,[2] the statute " 'provides public entities with a protective remedy for defending against unmeritorious litigation' [citation] as a judicially approved alternative to a constitutionally proscribed action for malicious prosecution." (*Knight* v. *City of Capitola* (1992) 4 Cal.App.4th 918, 931 [6 Cal.Rptr.2d 874].)

The sole question in this appeal is whether plaintiff Justine Hall maintained her medical negligence action "in good faith and with reasonable cause" when, in order to avoid a possible "empty chair" defense by codefendants, her attorney made the tactical decision to keep The Regents of the University of California (Regents) in the case through summary judgment. We conclude Hall's reasons for refusing to dismiss the Regents did not constitute reasonable cause within the meaning of section 1038. Accordingly, we reverse the portion of the judgment which denied the Regents defense costs following their successful motion for summary judgment. We remand the case for determination of the amount to be awarded.

## FACTUAL AND PROCEDURAL BACKGROUND

Hall sued the Regents for medical negligence on the part of the University of California at Davis Medical Center (UCDMC). She alleged the UCDMC negligently delayed revealing she was *not* positive for the human immunodeficiency virus (HIV) after it assumed her prenatal care. Other defendants not parties to this appeal included the medical group and laboratory that initially informed Hall she was infected with HIV. The Regents established the underlying facts in their unopposed motion for summary judgment.

On October 14, 1991, Hall began prenatal care at UCDMC on referral to the high-risk obstetrical-gynecological clinic. She reported she had tested positive for the HIV virus.

Hall believed she was infected with HIV based on her October 7, 1991, conversation with Dr. Phillip Burgette of the South Sacramento Maternal

as to the defense costs reasonably and necessarily incurred by the party or parties opposing the proceeding, and the court shall render judgment in favor of that party in the amount of all reasonable and necessary defense costs, in addition to those costs normally awarded to the prevailing party. . . ." (Italics added.) Under section 1038, defense costs include reasonable attorney fees and expenses associated with expert witnesses. (§ 1038, subd. (b).)

All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2]The Regents of the University of California are a public entity within the meaning of the Tort Claims Act. (Gov. Code, § 811.2.)

and Family Medical Group. Burgette informed Hall that her enzyme-linked immuno-sorbent assay (ELISA) test was positive for the HIV infection.

The ELISA test is designed to be as sensitive as possible in order to decrease the likelihood of false negative readings. As a result, it is susceptible to false positive readings. Typically, if the ELISA is positive for HIV, a second test is performed on the same sample. If there is a doubly reactive ELISA test, the laboratory performs the Western Blot test to verify the ELISA result. Dr. Burgette had not received the results of the confirming Western Blot test at the time he told Hall about the positive test result. He referred Hall to UCDMC for the remainder of her prenatal care because of the positive ELISA test.

On December 5, 1991, UCDMC performed an ELISA screening test which was negative for the HIV infection. On January 6, 1992, an immunology blood test revealed that Hall's suppressor T-cell count was within normal limits. A normal result is consistent with a person who is either not HIV infected or who is in the early stages of the infection. UCDMC performed another ELISA test on February 1, 1992, which was also negative for the HIV infection. Hall was informed of the negative results within 24 hours.

The Regents deposed George Kent, M.D., Hall's only retained expert, in March 1994. Kent testified that UCDMC did not breach the standard of care by delaying two months in informing Hall she was not infected with HIV. After the deposition, Hall's attorney, Ralph Drayton, remarked that Kent's testimony had "finished off" his case against UCDMC. However, Drayton refused to dismiss the Regents.

In May 1994, the Regents again requested dismissal. Drayton promised to make a decision within two weeks. However, he continued to prosecute the matter against the Regents.

Drayton subsequently advised the Regents he intended to proceed on a theory of ordinary negligence, since he had no effective expert testimony to use in a professional liability cause of action. In January 1995, the Regents' attorney, Ronald R. Lamb, referred Hall's attorney to *Flowers* v. *Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992 [35 Cal.Rptr.2d 685, 884 P.2d 142].[3] Although Drayton stated he was aware of the case, he continued to refuse to dismiss the Regents.

---

[3]*Flowers* rejected any distinction between claims for professional negligence and ordinary negligence in actions against medical professionals. (8 Cal.4th at pp. 996-997.) It also

On February 8, 1995, the Regents moved for summary judgment. Lamb advised Drayton that if he granted the dismissal, the Regents would waive recovery of costs. Drayton remained firm in his refusal to dismiss the Regents. However, Hall did not oppose the Regents' summary judgment motion.

The Regents filed a motion to recover defense costs pursuant to section 1038. Hall responded she had no alternative but to pursue the action to summary judgment to avoid an "empty chair" argument by the remaining codefendants.[4] In its tentative ruling, the court found the action had been maintained in subjective good faith but without reasonable cause, and granted the motion as to costs incurred after the deposition of Hall's expert.

At the hearing on the section 1038 motion, Drayton argued he would be guilty of malpractice if he dismissed the case against the Regents before summary judgment. He asserted it would have been negligent for a reasonable attorney not to have maintained the action to that stage in the litigation. Drayton maintained he could not stipulate to summary judgment because he had to have a finding on fault for section 437c, subdivision (k) to apply.

The court reversed the tentative ruling after the motion hearing. It suggested section 1038 failed to address the tactical dilemma facing Hall and continued, "As I thought about it this morning, I can't think of what [Drayton] might have done differently. I wish he hadn't taken so long, . . . which makes it a close call . . . ." The court made no express findings on good faith and reasonable cause.

## DISCUSSION

■ To avoid paying defense costs under section 1038, plaintiff must show he or she filed and pursued the action with "reasonable cause *and* in the good faith belief that there was a justifiable controversy under the facts and law which warranted the filing of the complaint, . . ." (§ 1038, subd. (a), italics added; *Carroll* v. *State of California* (1990) 217 Cal.App.3d 134, 140-141 [265 Cal.Rptr. 753].) The moving defendant must negate either

---

reiterated the general rule that the standard of care against which the acts of a medical professional are to be measured is a matter peculiarly within the knowledge of experts. (*Id.* at p. 1001.)

[4]Section 437c, subdivision (k) eliminates the potential for such tactics: "In actions which arise out of an injury to the person or to property, when a motion for summary judgment was granted on the basis that the defendant was without fault, no other defendant during trial, over plaintiff's objection, may attempt to attribute fault to or comment on the absence or involvement of the defendant who was granted the motion."

good faith or reasonable cause in order to prevail. (*Knight* v. *City of Capitola, supra,* 4 Cal.App.4th at pp. 931-932.)

"*Good faith,* or its absence, involves a factual inquiry into the plaintiff's subjective state of mind [citations]: Did he or she believe the action was valid? What was his or her intent or purpose in pursuing it? . . . Because the good faith issue is factual, the question on appeal will be whether the evidence of record was sufficient to sustain the trial court's finding." (*Knight* v. *City of Capitola, supra,* 4 Cal.App.4th at p. 932, italics in original.) Under the express wording of section 1038, "good faith" is linked to a belief in a "*justifiable controversy* under the facts and law . . . ." (Italics added.)

"*Reasonable cause* is to be determined objectively, as a matter of law, on the basis of the facts known to the plaintiff when he or she filed or maintained the action. Once what the plaintiff (or his or her attorney) knew has been determined, or found to be undisputed, it is for the court to decide ' "Whether any reasonable attorney would have thought the claim tenable . . . ." ' [Citations.] Because the opinion of the hypothetical reasonable attorney is to be determined as a matter of law, reasonable cause is subject to de novo review on appeal." (*Knight* v. *City of Capitola, supra,* 4 Cal.App.4th at p. 932, original italics.)

Section 1038 applies not only to tort actions initiated in bad faith, but also to actions initiated in good faith but maintained in bad faith and without reasonable cause. (*Curtis* v. *County of Los Angeles* (1985) 172 Cal.App.3d 1243, 1252 [218 Cal.Rptr. 772].)

The Regents do not dispute that Hall filed her action in good faith and for reasonable cause. However, they argue that once Dr. Kent testified in March 1994 that UCDMC did not breach the standard of care, there was no legitimate basis for maintaining the lawsuit. On appeal, they contend the court erred in impliedly finding tactical concerns regarding a potential "empty chair" defense provided reasonable cause within the meaning of section 1038. We conclude Hall's tactical concerns did not constitute reasonable cause as a matter of law.

A court's primary task in construing a statute is to determine the Legislature's intent, and the statutory language is the best indicator. (*Williams* v. *Superior Court* (1993) 5 Cal.4th 337, 350 [19 Cal.Rptr.2d 882, 852 P.2d 377].) At the same time, a statute must be construed in a way that renders it reasonable, fair, and harmonious with its manifest legislative purpose; ". . . the literal meaning of its words must give way to avoid harsh results and mischievous or absurd consequences." (*County of San Diego* v. *Muniz* (1978) 22 Cal.3d 29, 36 [148 Cal.Rptr. 584, 583 P.2d 109].)

Here, the recognized purpose of section 1038 is to discourage frivolous lawsuits by allowing blameless public entities to recover their defense costs. (*Curtis* v. *County of Los Angeles, supra,* 172 Cal.App.3d at p. 1250.) That the plaintiff may have her own legitimate tactical reasons for keeping the public entity in the lawsuit does not make the underlying claim against a public entity any less frivolous. Nor does it justify requiring the public entity to finance plaintiff's choice of litigation tactics.

Moreover, the trial court's construction of section 1038 creates a loophole which would undermine the purpose of the statute by removing the economic disincentive for frivolous lawsuits. Such a ruling would encourage plaintiffs to maintain their meritless claims through summary judgment for tactical reasons in any action where public entities were joined with other defendants.

This is not to say Hall's concerns are insignificant. However, if plaintiffs such as Hall are convinced of the advantage of keeping a blameless public entity defendant in their case through summary judgment, they should absorb the section 1038 defense costs as a litigation expense.

## DISPOSITION

The judgment denying defense costs is reversed and the case remanded for determination of the amount of defense costs due the Regents. Defendant shall recover costs on appeal.

Sims, Acting P. J., and Morrison, J., concurred.