Filed 11/18/21  Harrington v. County of El Dorado CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| LYNN D. HARRINGTON, | C092559 |
| Plaintiff and Appellant, | (Super. Ct. No. PC20160402) |
| v. | |
| COUNTY OF EL DORADO, | |
| Defendant and Respondent. | |

Lynn D. Harrington appeals from an order awarding attorney fees and costs to the County of El Dorado (County) under Code of Civil Procedure section 1038.[1]  Harrington was ordered to pay $121,837.50 in attorney fees and $11,637.85 in costs after the trial court found that her sole witness at trial was "wholly not credible."  On appeal,

---

[1]      Undesignated statutory citations are to the Code of Civil Procedure.

1

Harrington contends (1) insufficient evidence supported the findings that she acted without good faith in bringing this action and that she lacked reasonable cause to maintain the action, (2) the trial court erroneously held her to a heightened legal standard for showing that she acted in good faith and with reasonable cause, and (3) the award of fees violated her right to a jury trial.

We deem Harrington's substantial evidence challenges to be forfeited for failure to provide a sufficient record to facilitate review. We are not persuaded by Harrington's attempt to show that the trial court employed the wrong legal standard in imposing attorney fees and costs under section 1038. As to her claim that she was denied her right to a jury trial, we reject her argument because she received a jury trial. Accordingly, we affirm.

## BACKGROUND

In August 2016, Harrington filed a complaint against the County based on her allegations that the County's parking lot caused excessive amounts of water to flow onto her property and damage her residence during times of heavy rains. The complaint further alleged that Harrington had complied with the Government Claims Act (Gov. Code, § 810 et seq.) by receiving a " 'right to sue letter' " from the County before filing her action in superior court. Specifically, the complaint alleged that the County acknowledged receiving Harrington's tort claim on April 18, 2016.

The County filed an answer in which it denied receiving a tort claim from Harrington as required by Government Code section 905. Also in the answer, the County requested fees and costs under section 1038. The County reiterated its intention to seek attorney fees and costs under section 1038 in a meet-and-confer letter that it sent to Harrington's attorney, Timothy Hamilton. Harrington has omitted this letter, and numerous other attachments, from the appellate record. A description of the letter indicates that Andrew Caulfield, counsel for the County, informed Harrington that there was no evidence of proof of service of the tort claim on the County.

2

Hamilton responded that "he had a proof of service from April and would provide it." When Hamilton did not provide the promised proof of service, the County served a formal discovery request for the proof of service and issued a subpoena to the process server, Terry Nelsen. On May 25, 2017, Nelsen informed the County "that he had a proof of service from April 2016 relating to service of a tort claim on the County." Although Nelsen promised to provide the proof of service to Caulfield, Nelsen did not do so.

On May 31, 2017, Caulfield received a motion for leave to file a first amended verified complaint. Attached to the proposed first amended complaint was a declaration of Harrington with an exhibit showing a proof of service that was purportedly served in 2016. The proof of service form, however, bore a Judicial Council of California revision date of 2017. Nelsen later provided the same 2016 proof of service form to the County but "did not explain how Nelsen could have signed a proof of service form on April 27, 2016 when the proof of service form was not in circulation until 2017. Similar to Harrington's Declaration, there was no mention in Nelsen's Declaration that he was attaching a copy of a proof of service he executed in 2017 that was meant to replace an original signed in 2016 that had somehow gone missing."[2]

The County deposed Harrington over the course of two days. Caulfield would declare, "At no point in time during her two separate days of deposition, did [Harrington], or her attorney who was actively defending the deposition, mention that there was some prior, original proof of service executed by Nelsen and purporting to

---

[2]    The record suggests that Harrington may have served a tort claim, albeit defectively. She picked up a form but could not remember from where she got it. The tort claim appears to have been made on a form provided by the El Dorado County Emergency Services Authority (JPA). Nelsen served the form on the JPA – not the County. El Dorado County is not a member of the JPA. There is no argument that the service on the JPA meets the requirement to present the tort claim to the County before suing the County.

3

attest to service of a claim on the County that had somehow gone missing and what was being discussed repeatedly at deposition was a replacement proof of service."

The County pursued a deposition of Nelsen. "After approximately ten months of evading multiple process servers hired by the County to serve Nelsen with a deposition subpoena, and after first disobeying two deposition subpoenas by failing to appear at deposition, Nelsen finally presented himself for deposition on March 28, 2018. At no point during his deposition did Nelsen, or Mr. Hamilton, who was defending the deposition, in any way suggest or indicate that the proof of service being discussed during the deposition was a 'replacement' for an original that had somehow gone missing or been lost." During his deposition, Nelsen affirmed that he signed the proof of service within two weeks of April 27, 2016. However, the proof of service bears the Judicial Council revision date of February 1, 2017. Nelsen could not explain why he waited exactly a year to send an invoice for the proof of service.

During his deposition, Nelsen testified that he received three telephone calls from unknown persons offering him money to change his testimony to say that he never signed the proof of service. Nelsen first asserted that the caller was from the law office representing the County. He later equivocated, saying that it was only an unidentified male.

After Nelsen's deposition, the County moved for terminating sanctions in April 2018. Harrington opposed the motion. In support of the opposition, Hamilton declared that the proof of service previously submitted was merely a "replacement proof of service." Hamilton purportedly secured this replacement proof of service after he discovered that the original proof of service was missing from the superior court file. Hamilton further declared that the absence of the original proof of service from the superior court file lead him "to believe that the county set some sort of trap because but for missing documents from the court file, the county would not have any grounds to bring the [motion for terminating sanctions]." Hamilton's declaration does not explain

4

why he did not previously inform anyone that the proof of service was a replacement for a lost original. Harrington's opposition also argued that she did not give knowingly false information when she testified that she received a copy of – or at least saw – the original proof of service. The opposition also argued that Nelsen did not perjure himself during his deposition testimony.

On a law and motion calendar, the trial court denied the motion for terminating sanctions. In denying the motion, the trial court explained: "Though the court is concerned about the process server's testimony related to when the proof of service filed on May 15, 2017 was executed, he always consistently maintained in his testimony that the proof of service accurately reflected he actually served the tort claim on the County on April 27, 2016." The matter proceeded to a jury trial.

Trial was bifurcated. The sole issue during the first phase of trial concerned whether Harrington timely served her tort claim on the County. During the motions in limine prior to trial, Hamilton stipulated to exclude Nelsen's story about three phone calls seeking to bribe him into changing his deposition testimony. Hamilton also represented to the court that Nelsen would be the only witness for the plaintiff. Hamilton stated, "The Plaintiff has no idea whether [Nelsen] did his job or not."

The issue of service of Harrington's tort claim on the County was tried to a jury. Harrington has not provided a complete reporter's transcript of the trial. Indeed, Harrington has provided a cut-off portion of Nelsen's testimony at trial. Harrington has included some of her attorney's closing argument, but no portion of the County's closing argument.

The portion of the reporter's transcript included in the appellant's appendix shows Nelsen testified: The proof of service to which he referred during this deposition was "a recreation of the original," but Nelsen could not explain why he had not mentioned that it was a recreation. The following colloquy occurred:

5

"Q. [(by counsel for the County)] So your testimony that you signed it under oath when you testified you signed it in 2016 was incorrect; isn't that true?

"A. [(by Nelsen)] Yes. From the date that I did this to the deposition was two years. [¶] . . . [¶]

"Q. Mr. Nelsen, is there a reason why you didn't tell us about the original Proof of Service that the Court lost at your deposition?

"A. I don't recall why I didn't tell you about it. I don't know."

Nelsen admitted that no proof of service before May 15, 2017, was ever filed with the trial court.

The County produced testimony from seven witnesses in support of its defense that Harrington never served the claim as required by Government Code section 905. The reporter's transcript does not contain any of the testimony of the witnesses for the defense.

The jury returned a special verdict finding that Harrington had not served a tort claim on the County prior to filing her action in superior court on August 31, 2016. Harrington and the County stipulated to a directed verdict on all causes of action in the second amended complaint that required presentation of a claim under Government Code section 905.

The County filed a motion for attorney fees and costs under section 1038. Harrington opposed the motion. The trial court heard the matter, and ordered Harrington to pay $121,837.50 in attorney fees and $11,637.85 in costs. From the order imposing attorney fees and costs, Harrington timely filed a notice of appeal.

**DISCUSSION**

**I**

*Substantial Evidence Challenge*

Harrington challenges the sufficiency of the evidence in support of the trial court's findings that she acted without good faith in bringing this action and that she lacked

6

reasonable cause to maintain the action. The argument is deemed forfeited because Harrington has not provided an adequate appellate record to facilitate review of her substantial evidence claims.

## A.

## Trial Court Findings

In ordering attorney fees and costs under section 1038, the trial court made findings of fact based largely on exhibits attached to a declaration by Caulfield, the County's attorney. The trial court found that Harrington's first amended complaint contained "a Declaration from Ms. Harrington with a proof of service for the tort claim attached to her declaration. (Andrew Caulfield's Dec. in Support, para. 16-19, Ex. 7-9.) Neither Ms. Harrington nor Mr. Hamilton could explain why Mr. Nelsen (his name is also misspelled on the signature line) signed the proof of service on April 27, 2016, despite the fact that the Judicial Council form had not been created until February 1, 2017. (Andrew Caulfield's Decl. in Support, para. 20, Ex. 10.) The jury found there was not a tort claim served on the County. In fact, after a difficult time getting Mr. Nelsen to a deposition (Andrew Caulfield's Decl. in Support, para. 23-24, Ex. 12.), neither Ms. Harrington nor Mr. Nelsen indicated in their depositions the April 27, 2016 proof of service was a 'replacement.' (Andrew Caulfield's Decl. in Support, para. 20-21, Ex. 10; para 23-24, Ex. 12.) At trial, the jury found Ms. Harrington did not service a tort claim on the County, reflecting there was no viable or credible explanation from Mr. Nelsen, or anyone else, related to these inconsistencies on the proof of service." The trial court further found Hamilton knew there was not valid proof of service for the tort claim prior to filing the complaint in superior court. The order also explained, "Based on the aforementioned facts and the facts below and given the complete lack of cooperation by Mr. Hamilton when Mr. Caulfield requested the requisite documentation starting on April 20, 2017, the Court finds plaintiff lacked good faith."

7

Even though the trial court expressly relied on the exhibits attached to the Caulfield declaration in making its findings, Harrington has omitted the exhibits from her appellate appendix.

**B.**

**Appellant's Duty to Produce an Adequate Appellate Record**

A cardinal rule on appeal requires us to presume that the order of a trial court is correct. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) Moreover, we draw all inferences and presumptions in favor of the correctness of the appealed-from order. (*Ibid.*) As a corollary, "[t]he appellant must affirmatively demonstrate error by an adequate record. In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. 'If any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented.' [Citations.]" (*Bennett v. McCall* (1993) 19 Cal.App.4th 122, 127 (*Bennett*), quoting *Buckhart v. San Francisco Residential Rent etc., Bd.* (1988) 197 Cal.App.3d 1032, 1036.) In short, "[i]njury is not presumed from error, but injury must appear affirmatively upon the court's examination *of the entire record*." (*In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337, italics added (*McLaughlin*).)

**C.**

**Forfeiture**

Harrington argues the order lacked substantial evidence in support of the findings that the action was not brought with reasonable cause or in the good faith belief there was a justifiable controversy. However, she omits from the record the very evidence relied upon by the trial court in making its findings, i.e., the exhibits to the Caulfield declaration. Moreover, Harrington provides only that portion of the reporter's transcript that contains part of the testimony of her witness, Nelsen. However, the trial court found Nelsen "wholly not credible." Harrington omits from the appellate record any part of the

8

testimony offered by the County's witnesses at trial in support of the defense that Harrington never properly filed her tort claim under Government Code section 905. Indeed, Harrington's appellate appendix does not even contain a copy of her operative complaint. It is easy to claim insufficient evidence in support of an order when omitting all evidence relied upon by the trial court in making that order. It is also an ineffective claim because we deem it forfeited for lack of an adequate appellate record. (*Bennett*, *supra*, 19 Cal.App.4th at p. 127; *McLaughlin*, *supra*, 82 Cal.App.4th at p. 337.)

## II

## Evidentiary Standard

This court has previously explained that " '[t]o avoid paying defense costs under section 1038, plaintiff must show he or she filed and pursued the action with "reasonable cause and in the good faith belief that there was a justifiable controversy under the facts and law which warranted the filing of the complaint." ' " (*Ponte v. County of Calaveras* (2017) 14 Cal.App.5th 551, 559, italics omitted.) Harrington argues that the trial court held her to a heightened evidentiary standard for showing that she acted in good faith and with reasonable cause to maintain her action against the County. We are not persuaded.

As to the first prong regarding good faith, Harrington argues "that finding is unsupported by any evidence." Her argument is forfeited for lack of an adequate appellate record. (See part I.C., *ante*.)

As to the second prong regarding reasonable cause, we reject Harrington's claim that "[t]he *mere existence* of the unresolved conflict on a material issue of fact establishes 'reasonable' and 'probable' cause as a matter of law." As this court has previously noted, "the recognized purpose of section 1038 is to discourage frivolous lawsuits by allowing blameless public entities to recover their defense costs." (*Hall v. Regents of University of California* (1996) 43 Cal.App.4th 1580, 1587 (*Hall*).) " 'Reasonable cause is to be determined objectively, as a matter of law, on the basis of the facts known to the plaintiff when he or she filed or maintained the action. Once what the plaintiff (*or his or her*

9

*attorney*) knew has been determined, or found to be undisputed, it is for the court to decide " 'Whether any reasonable attorney would have thought the claim tenable . . . .' " ' " (*Id.* at p. 1586, italics omitted & added, quoting *Knight v. City of Capitola* (1992) 4 Cal.App.4th 918, 932.)

Here, the trial court expressly found that "Hamilton *knew* plaintiff's lawsuit did not have a valid proof of service for the tort claim prior to filing the original Complaint." (Italics added.) This knowledge is imputed to Harrington. (*Hall, supra,* 43 Cal.App.4th at p. 1586.) Consequently, Harrington filed and maintained an action known to be barred by the failure to comply with Government Code section 905. The trial court properly concluded that this was unreasonable and authorized attorney fees under section 1038.

Harrington asserts that "[n]o evidence supports this finding" that Hamilton actually knew her lawsuit lacked a proof of service for any tort claim under Government Code section 905. As we explain in part I.C., above, the appellate record submitted by Harrington precludes any challenged to the sufficiency of the evidence in support of the trial court's order granting fees and costs under section 1038. Harrington has not demonstrated error.

## III

## Right to Jury Trial

Finally, Harrington argues that "the trial court's ruling awarding attorneys' fees to resolve a stipulated issue of material fact violated [her] right to a jury trial." This argument is frivolous.

Harrington *actually got a jury trial*. During the two-day jury trial, Harrington was represented by legal counsel, her attorney introduced evidence on her behalf, and her attorney tendered arguments on her behalf. A jury deliberated and reached a verdict. Harrington acknowledges she chose to proceed by jury trial. Even so, it appears that Harrington believes that she was denied the right to a jury trial because she was

10

subsequently ordered to pay attorney fees imposed under section 1038.[3]  She laments that "[t]rials are inherently unpredictable, and no competent attorney would presume to predict with certainty which witnesses the jury will deem credible."  Harrington seems to argue that she is being "punished for invoking and exercising her constitutional right of trial by jury" because she now has to pay attorney fees for bringing an action that was barred.

Harrington forgets that the record establishes her sole witness was "wholly not credible" and that her attorney knew her lawsuit was filed without the requisite claim made to the County.  The right to a jury trial is not the right to win.  Instead, the right to a jury trial encompasses the opportunity to present evidence and to have a jury determine the pertinent factual issues.  (*United States v. Scheffer* (1998) 523 U.S. 303, 308 [140 L.Ed.2d 413].)  The right to present evidence, however, is not unlimited.  Instead, the right extends only to the opportunity to present *reliable* evidence.  (*Id.* at p. 309.)  Accordingly, we reject Harrington's argument that she was denied the right to a jury trial.

---

[3]  Harrington does not appear to challenge the award of costs to the County.

## DISPOSITION

The order awarding attorney fees and costs under Code of Civil Procedure section 1038 is affirmed.  The County shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


　　　　　　　　　　　　　　　　　　　　　　　　 /s/
　　　　　　　　　　　　　　　　　　　　　　　HOCH, J.



We concur:



 /s/
MAURO, Acting P. J.



 /s/
KRAUSE, J.