Filed 9/14/22  Burkot v. County of L.A. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ANDREW BURKOT, | B306244 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC714061) |
| v. | |
| COUNTY OF LOS ANGELES, | |
| Defendant and Appellant. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, John J. Kralik, Judge.  Affirmed.

Balaban & Spielberger, Daniel K. Balaban, Andrew J. Spielberger, Kahren Harutyunyan, Vanessa L. Loftus-Brewer; Esner, Chang & Boyer, Shea S. Murphy and Kathleen J. Becket for Plaintiff and Appellant.

Collin + Collins, Erin R. Dunkerly, Christian E. Foy Nagy, Sam Farzani and James C. Jardin for Defendant and Appellant.

* * * * * *

Plaintiff and appellant Andrew Burkot (plaintiff) appeals from the summary judgment entered in favor defendant and appellant County of Los Angeles (County) in this action for dangerous condition on public property under Government Code section 835.  The County appeals from the order denying its motion for attorney fees under Code of Civil Procedure section 1038.  We affirm the judgment and the order denying the motion for attorney fees.

## BACKGROUND

On November 1, 2017, at approximately 9:10 p.m., plaintiff was crossing Montrose Avenue where it intersects Mira Vista Avenue and Rincon Avenue in a marked, ladder-type crosswalk when he was struck by a vehicle driven by Haemin Soonsang Chang (Chang), traveling westbound on Montrose Avenue.  Plaintiff was approximately halfway across the marked crosswalk when he heard Chang's vehicle approaching.  He stopped in-line with the center left turn lane to allow the vehicle to pass by.  Montrose Avenue is a four-lane, two-way street that runs east-west.  There are two lanes of traffic in each direction divided by a painted double yellow median that provides left turn lanes at intersections.  There is an uphill grade of approximately 5.9 percent for westbound motorists on Montrose Avenue approaching the Mira Vista/Rincon intersection.  On the night of the accident, Chang was traveling in this uphill direction in the No. 1 lane of westbound Montrose Avenue at a speed at or below the 35-mile-per-hour (mph) limit.

Chang was generally familiar with the area and knew there was a crosswalk at that location on Montrose Avenue.  Chang did not see anything in the crosswalk until his vehicle was

2

approximately five to 10 feet away from plaintiff. When Chang realized someone was in the crosswalk, he applied his brakes too late to avoid a collision and instinctively turned to the left into the center left turn lane. When Chang did so, his vehicle struck and injured plaintiff.

At the time of the accident, several warning signs were posted on Montrose Avenue to alert westbound motorists to the pedestrian crossing. A yellow diamond warning sign with the symbol for a pedestrian and the word "AHEAD" was located on the right-side curb of westbound Montrose Avenue. There was also a white sign with a red yield symbol and black arrow with the words "YIELD HERE" and the symbol for a pedestrian and an arrow pointing toward a line of white yield triangles on the roadway on the right-side curb of westbound Montrose before the crosswalk. A row of white yield triangles were painted across two lanes of Montrose Avenue and the shared center lane before the crosswalk.

## PROCEDURAL HISTORY

After filing a claim against the County under the Government Claims Act (Gov. Code, § 810 et seq.), plaintiff commenced this action against the County, alleging dangerous condition on public property as the sole cause of action. The complaint alleges the intersection at which plaintiff was injured is dangerous because of its defective design, improper roadway maintenance, restricted sight lines for cars approaching the intersection, and the absence of traffic signals and proper signs for pedestrian safety.

The County filed a motion for summary judgment, supported by a separate statement of undisputed facts and

3

documentary evidence, including the declaration of Rock Miller, a civil and traffic engineering expert.  The County's notice of motion and motion requested costs and fees under Code of Civil Procedure section 1038 and its memorandum of points and authorities discussed its entitlement to such fees.

Plaintiff's opposition to the motion was supported by, among other evidence, the declarations of two experts, Robert Koetting, a traffic accident reconstructionist, and Edward Ruzak, a civil and traffic engineer.  Both Koetting and Ruzak opined that the roadway was dangerous because of a combination of factors, including sight restrictions caused by the curvature and elevation of the road; obstructions caused by parked cars, overgrown foliage, and utility poles; and insufficient stopping sight distance for motorists approaching the crosswalk.  The parties filed objections to their respective evidentiary submissions.

The trial court sustained the County's evidentiary objections to much of the Koetting and Ruzak declarations.  The court granted the summary judgment motion on March 11, 2020, finding that the County met its initial burden of establishing no dangerous condition and that plaintiff failed to raise any triable issue of material fact to the contrary.  The trial court further found that lack of causation and the County's immunity under Government Code sections 830.4 and 830.8 were alternative grounds for granting the summary judgment motion.  The trial court declined to address other issues unnecessary to its summary judgment ruling.

Judgment was entered in the County's favor on March 24, 2020.  Notice of entry of judgment was served on March 25, 2020.  Plaintiff filed a motion for a new trial, which the trial court denied.

4

On May 26, 2020, the County filed a motion for attorney fees pursuant to Code of Civil Procedure section 1038. Plaintiff opposed the motion, arguing that it was untimely and that his action was brought in good faith and with reasonable cause. The trial court found the motion was not untimely but denied it on the merits in an order issued on September 21, 2020. This appeal and cross-appeal followed.

## DISCUSSION

### I. Summary judgment

#### A. *General legal principles and standard of review*

Summary judgment is granted when a moving party establishes the right to entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment bears the initial burden of proving there is no merit to a cause of action by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2); *Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1037.) Once the defendant has made such a showing, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or as to a defense to the cause of action. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.) If the plaintiff does not make such a showing, summary judgment in favor of the defendant is appropriate. In order to obtain a summary judgment, "all that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action . . . . [T]he defendant need not himself conclusively negate any such element . . . ." (*Id.* at p. 853, fn. omitted.) We review

5

the trial court's grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348; see Code Civ. Proc., § 437c, subd. (c).)

The California Supreme Court in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535, left open the question as to whether a trial court's ruling on objections to evidence supporting or opposing a summary judgment motion should be reviewed de novo or for an abuse of discretion. Appellate courts are divided on this issue. (Compare *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 852 [applying abuse of discretion standard] with *Pipitone v. Williams* (2016) 244 Cal.App.4th 1437, 1451 [de novo review].) The weight of authority, however, supports an abuse of discretion standard of review (see, e.g., *Serri*, at p. 852; *Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694; *Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1169), and we apply that standard here.

**B.**    *Evidentiary rulings*

Rulings on evidentiary objections based on lack of foundation or conclusory and speculative testimony are within the trial court's sound discretion. (*Alexander v. Scripps Memorial Hospital La Jolla* (2018) 23 Cal.App.5th 206, 226.) A trial court abuses its discretion only if its ruling is ""'so irrational or arbitrary that no reasonable person could agree with it.'"" (*Sanchez v. Kern Emergency Medical Transportation Corp.* (2017) 8 Cal.App.5th 146, 154.) The appellant has the burden on appeal of establishing such an abuse of discretion. (*Ibid.*)

Plaintiff fails to establish any abuse of discretion in the trial court's evidentiary rulings. Declarations in summary

6

judgment proceedings must set forth admissible evidence as to which the declarant is competent to testify based on personal knowledge, not legal conclusions or speculation without foundation. (Code Civ. Proc., § 437c, subd. (d).) A declaration that is not based on personal knowledge or that states legal conclusions without evidentiary facts must be disregarded. (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1119-1120 (*Guthrey*).)

Plaintiff's expert declarations are not based on personal knowledge or evidentiary facts. The stated opinions are also vague. In paragraph 7 of his declaration, Koetting states that "there was a stopping sight distance of less than 250 ft at times and places and less than 100 ft at times and places on the night of the collision." He does not, however, explain how he measured those distances, or at what times and places those sight distances applied. Ruzak's declaration reiterates Koetting's statements concerning sight distances, but provides no criteria for measuring those distances. Both Ruzak and Koetting state in their declarations that overgrown tree foliage obstructed signs on Montrose Avenue and that parked cars impeded the view of motorists, but neither expert states whether he had knowledge of those conditions at the time of the accident. Ruzak's and Koetting's declarations fail to lay the foundation for their opinions, and the trial court did not abuse its discretion by sustaining the County's evidentiary objections on that basis. (*Guthrey, supra*, 63 Cal.App.4th at pp. 1119-1120.)

After the trial court issued its tentative ruling on the summary judgment motion, including its evidentiary rulings, plaintiff filed, minutes before the hearing on the motion, a request for a continuance. The purpose of the continuance was to

7

have the trial court consider a supplemental declaration by Koetting stating the basis for his sight distance measurements. The supplemental declaration states that Koetting's sight distances were premised on the following hypothetical assumptions: (1) plaintiff was starting to enter the crosswalk when Chang's vehicle first came into view, (2) Chang's view of plaintiff was obstructed by one or more parked vehicles, and (3) the parked vehicle was at least eight feet wide. As the trial court noted, these factual assumptions are inconsistent with plaintiff's deposition testimony. Plaintiff testified that he was halfway through the crosswalk, in the left turn lane, when Chang's vehicle first came into view. Admissions or concessions made during the course of discovery control over contrary declarations filed in opposition to a motion for summary judgment. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21-22; *Visueta v. General Motors Corp.* (1991) 234 Cal.App.3d 1609, 1613.) The trial court did not abuse its discretion by disregarding Koetting's untimely supplemental declaration that conflicted with plaintiff's deposition testimony.

*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, which states that an expert declaration opposing summary judgment should be liberally construed, does not allow courts to relax the rules of evidence when determining the admissibility of an opposing declaration. Only admissible evidence may be considered when determining whether a triable issue exists. (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761.)

### C.   *Dangerous condition on public property*
#### 1.   *Applicable legal principles*

A public entity such as the County is not liable for an injury arising out of an act or omission of the public entity or its employees except as provided by statute.  (Gov. Code, § 815, subd. (a).)  The sole statutory basis for imposing liability on the County as a property owner is Government Code section 835.  (*Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1347.)  That statute "'prescribes the conditions under which a public entity may be held liable for injuries caused by a dangerous condition of public property.  [Citation.]  Section 835 provides that a public entity may be held liable for such injuries "if the plaintiff establishes [(1)] that the property was in a dangerous condition at the time of the injury, [(2)] that the injury was proximately caused by the dangerous condition, [and] [(3)] that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred."  In addition, the plaintiff must establish [(4)] that either: (a) "[a] negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition . . . ," or (b) "[t]he public entity had . . . notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."'"  (*Thimon v. City of Newark* (2020) 44 Cal.App.5th 745, 753 (*Thimon*).)

A "dangerous condition" is defined as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."  (Gov. Code, § 830.)  Public property may be considered to be in a dangerous

condition "'because of the design or *location* of the improvement, the interrelationship of its structural or natural features, or the presence of latent hazards associated with its normal use.'" (*Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 149.)

The failure to provide traffic or warning signals, signs, or markings does not constitute a "dangerous condition" for which a public entity may be liable when the allegedly dangerous condition exists solely because of the failure to provide a traffic device or street marking. (*Washington v. City and County of San Francisco* (1990) 219 Cal.App.3d 1531, 1534-1535.) Government Code section 830.4 states: "A condition is not a dangerous condition within the meaning of this chapter merely because of the failure to provide regulatory traffic control signs, stop signs, yield right-of-way signs, or speed restriction signs, as described by the Vehicle Code, or distinctive roadway markings as described in Section 21460 of the Vehicle Code." Government Code section 830.8 similarly provides:

> "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the failure to provide traffic or warning signals, signs, markings or devices described in the Vehicle Code. Nothing in this section exonerates a public entity or public employee from liability for injury proximately caused by such failure if a signal, sign, marking or device (other than one described in Section 830.4) was necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care."

The existence of a dangerous condition is ordinarily a question of fact but can be decided as a matter of law if a court, viewing the evidence most favorably to the plaintiff, determines "that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used." (Gov. Code, § 830.2.)

**2.** *The County met its prima facie burden of establishing no dangerous condition*

The County met its initial burden of showing there was no dangerous condition. It presented evidence that multiple signs and symbols warning drivers of a pedestrian crossing were painted on the westbound lanes of Montrose Avenue and were posted on the roadside facing westbound traffic within a block of the marked crosswalk and at the crosswalk itself, which was painted with white, reflective paint. The County also presented evidence that on October 12 and November 2, 2017, it inspected Montrose Avenue in the ordinary course of business and pursuant to Department of Public Works protocol and found no conditions requiring maintenance. In 2014 and again in 2016, in response to public requests about the crosswalk, County engineers investigated the condition of the roadway, conducted radar speed checks, manual traffic counts, and a reviewed existing signage and determined that County guidelines for installing warning lights, flashing beacons, or multi-way stop controls were not met.

The County also presented the declaration of its expert, Rock Miller, who conducted site inspections and measured the sight distances available to a pedestrian proceeding northbound in the crosswalk and a motorist traveling westbound toward the crosswalk. Miller opined that "[a] pedestrian and motorist would be able to see each other readily with no obstructions to their line of sight, if the pedestrian was standing on the southeast corner of the intersection and the vehicle was approaching from a distance of approximately 320 feet or less." Miller further opined that the sight distance from the location where Chang's vehicle struck plaintiff (in the crosswalk in front of the westbound left turn lane of Montrose Avenue) to a westbound approaching motorist would be approximately 500 feet. Miller compared this 500 foot sight distance with guidelines set forth in the CalTrans Highway Design Manual, which suggests minimum sight distances as design guidelines for new construction. The CalTrans manual suggests a distance of 250 feet for a 35 mph speed zone (the applicable speed limit on Montrose Avenue and the speed at which Chang's vehicle was traveling), a suggested distance of 300 feet for 40 mph, and a suggested distance of 500 feet for 55 mph. Miller stated that although one of the pedestrian warning signs near the crosswalk (the PED XING sign facing westbound traffic on the right side of the crosswalk) may have been partially obscured by a tree, there were multiple other warning signs and symbols alerting approaching motorists to the crosswalk. Chang, moreover, admitted that he was familiar with the area and knew of the presence of the crosswalk.

The County also presented evidence that it had no notice of any dangerous condition because there had been no reported traffic accidents at the subject location during the nine years

preceding plaintiff's accident. The absence of prior similar incidents supports the inference that drivers exercising due care would not have caused such an accident. (*Thimon, supra*, 44 Cal.App.5th at p. 756.)

The County's prima facie showing in this case is similar to that made by the defendant in *Thimon, supra*, 44 Cal.App.5th 745, which the parties addressed in supplementing briefing in the trial court. The plaintiff in *Thimon* was on her way to school at 7:30 a.m. when she reached a crosswalk. That crosswalk, like the one at issue here, was located at an uncontrolled intersection on a two-way, four-lane roadway with an additional turning lane in the center. The plaintiff waited for traffic to abate before entering the crosswalk and was struck by a vehicle approximately six seconds later. The motorist, who was driving at a speed within the posted limit, did not see the plaintiff because of glare from the morning sun. (*Id*. at p. 748.) The plaintiff alleged the crosswalk was a dangerous condition for a host of reasons, including placement of the crosswalk in a four-lane roadway with a 45 mph speed limit; failure to follow recommended standards for the location and design of the crosswalk; and failure to install proper signage, traffic signals, and controls such as a "'blinking yellow arterial to warn drivers of the impending crosswalk'" or "'pedestrian actuated mechanisms to alert a driver of a pedestrian's use of the crosswalk.'" (*Id*. at p. 758.) The city moved for summary judgment, presenting evidence that the intersection had a crosswalk painted with white lines; signs warning of pedestrians were installed on the approach to the intersection; the roadway was flat and had no blind corners or vegetation that would obstruct a motorist's view of a pedestrian in the intersection;

13

although the sun impeded the view of the motorist who struck the plaintiff, the motorist was aware of the glare well before he approached the intersection; and there was no history of collisions involving pedestrians at the crosswalk in the 10 years preceding the plaintiff's accident.  (*Id.* at p. 756.)  Both the trial and appellate courts in *Thimon* determined that the city had met its prima facie burden of demonstrating no dangerous condition.  (*Id.* at p. 758.)  The County's showing in this case is similar to that in *Thimon*, and we conclude that the evidence demonstrates, prima facie, that no dangerous condition existed.

Plaintiff attempts to distinguish *Thimon* by arguing that the court in that case rejected the theory "that an intersection on a heavily travelled thoroughfare is made dangerous by the type or existence of crosswalk markings, the lighting conditions, or the lack of traffic signals or other devices" (*Thimon, supra*, 44 Cal.App.5th at p. 763), whereas plaintiff's theory of liability is based on "*visual obstruction* caused by the uphill curvature of Montrose Avenue . . . along with other conditions."  Plaintiff's theory is unsupported, however, by any admissible evidence.  The trial court excluded his experts' opinions on sight distances and visual obstructions for lack of foundation.  Plaintiff's unspecified "other conditions" are insufficient grounds for distinguishing *Thimon*.

### 3.    *Plaintiff failed to raise a triable issue of material fact*

Because the County met its initial burden of demonstrating the absence of a dangerous condition, the burden shifted to plaintiff to raise a triable issue of material fact to the contrary.  Plaintiff failed to do so.

14

A principal argument plaintiff raises on appeal is that limited or obstructed sight distances for *pedestrians* entering the crosswalk created a dangerous condition. He contends the trial court improperly focused on sight distances applicable to approaching motorists such as Chang and on the incorrect factual assumption that plaintiff was in the middle of the road when Chang's vehicle appeared. Plaintiff's argument is flawed for several reasons.

First, plaintiff did not plead this theory of liability in his complaint. Rather, the complaint alleges that "restricted sight lines for the cars traveling uphill or downhill on Montrose Avenue" constituted a dangerous condition. The complaint further alleges that Chang "did not see [plaintiff] until his vehicle was several feet from [plaintiff]." There are no allegations of restricted sight lines for pedestrians. Claims framed by the pleadings limit the scope of the issues properly addressed in a summary judgment motion. (*Howard v. Omni Hotels Management Corp.* (2012) 203 Cal.App.4th 403, 421; see *Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250 [pleadings set the boundaries of the issues to be resolved in a summary judgment proceeding].) A defendant moving for summary judgment has the burden of negating only those theories of liability alleged in the complaint; the moving party need not address theories not included in the pleadings. (*Nativi v. Deutsche Bank National Trust Co.* (2014) 223 Cal.App.4th 261, 290 (*Nativi*); *California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625, 637, fn. 3 ["A party may not oppose a summary judgment motion based on a claim, theory, or defense that is not alleged in the pleadings."].)

15

The County presented evidence, in any event, refuting plaintiff's theory of liability on appeal. The County's expert, Miller, opined that "[a] pedestrian and motorist would be able to see each other readily with no obstructions to their line of sight, if the pedestrian was standing on the southeast corner of the intersection and the vehicle was approaching from a distance of approximately 320 feet or less." Plaintiff's theory is also contradicted by his own deposition testimony that he was in the middle of the crosswalk, and not just stepping off the curb onto Montrose Avenue, when Chang's vehicle first appeared.

Finally, plaintiff's theory of liability is unsupported by admissible evidence. His experts' opinions on restricted sight distances and obstructions were excluded for lack of foundation.

Summary judgment was properly granted on plaintiff's sole cause of action for dangerous condition on public property.

**4.** *The County has signage immunity*

Summary judgment was also properly granted based on the County's immunity under Government Code sections 830.4 and 830.8.

As a matter of law, the County is immune from liability based on the absence of traffic signals or proper signs for pedestrian safety unless a signal or sign "was necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care." (Gov. Code, § 830.8.) Plaintiff's claim that the intersection was dangerous because of the uphill curvature of the road, the length of the crosswalk, obstructions caused by foliage, utility poles, "and other factors" was unsupported by admissible evidence. Rather, the uncontroverted evidence shows there was a 500-foot

16

sight distance from plaintiff's position in the middle of the crosswalk when the accident occurred and Chang's westbound approaching vehicle. Summary judgment was properly granted in the County's favor on the alternative ground of immunity under Government Code sections 830.4 and 830.8.

## II.    New trial motion

Plaintiff challenges the denial of his motion for a new trial based on newly discovered evidence. We review the order denying plaintiff's new trial motion for abuse of discretion. (*Richardson v. Superior Court* (2008) 43 Cal.4th 1040, 1047.) "'A trial court will be found to have abused its discretion only when it has "'exceeded the bounds of reason or contravened the uncontradicted evidence.'"'" (*Id.* at p. 1048.) Plaintiff fails to establish any abuse of discretion. His reliance on an undated design plan indicating the subject crosswalk should not be restored is insufficient to contravene the undisputed evidence that the crosswalk was not a dangerous condition at the time of the accident.

## III.   Attorney fees

### A.    *Applicable law and standard of review*

Code of Civil Procedure section 1038 states: "In any civil proceeding under the Government Claims Act . . . , the court, upon motion of the defendant or cross-defendant, shall, at the time of the granting of any . . . motion for judgment under Section 631.8 . . . , determine whether or not the plaintiff, petitioner, cross-complainant, or intervenor brought the proceeding with reasonable cause and in the good faith belief that there was a justifiable controversy under the facts and law which warranted the filing of the complaint, petition, cross-complaint, or complaint or answer in intervention. If the court should determine that the

17

proceeding was not brought in good faith and with reasonable cause, an additional issue shall be decided as to the defense costs reasonably and necessarily incurred by the party or parties opposing the proceeding, and the court shall render judgment in favor of that party in the amount of all reasonable and necessary defense costs, in addition to those costs normally awarded to the prevailing party."

A motion for fees under Code of Civil Procedure section 1038 must be made before entry of judgment.  Subdivision (c) of the statute provides:  "This section shall be applicable only on motion made before the discharge of the jury or entry of judgment, and any party requesting the relief pursuant to this section waives any right to seek damages for malicious prosecution. Failure to make the motion shall not be deemed a waiver of the right to pursue a malicious prosecution action." (Code Civ. Proc., § 1038, subd. (c).)

Code of Civil Procedure section 1038 permits a public entity to recover costs, including attorney fees, from a plaintiff who files a frivolous civil action under the California Tort Claims Act (Gov. Code, § 900 et seq.) after a defendant prevails on a motion for summary judgment, directed verdict, or nonsuit.  (Code Civ. Proc., § 1038; *Kobzoff v. Los Angeles County Harbor/UCLA Medical Center* (1998) 19 Cal.4th 851, 853 (*Kobzoff*).)  A court awarding fees under Code of Civil Procedure section 1038 must "'determine whether or not the plaintiff . . . brought the proceeding with reasonable cause and in the good faith belief that there was a justi[f]iable controversy under the facts and law which warranted the filing of the complaint.'"  (*Carroll v. State of California* (1990) 217 Cal.App.3d 134, 140.)  "Reasonable cause"

18

is an objective standard which asks whether any reasonable attorney would have thought the claim tenable.  (*Ibid.*)

"'*Good faith*, or its absence, involves a factual inquiry into the plaintiff's subjective state of mind [citations] . . . .  A subjective state of mind will rarely be susceptible of direct proof; usually the trial court will be required to infer it from circumstantial evidence.  Because the good faith issue is factual, the question on appeal will be whether the evidence of record was sufficient to sustain the trial court's finding.'"  (*Clark v. Optical Coating Laboratory, Inc.* (2008) 165 Cal.App.4th 150, 183 (*Clark*).)

"Reasonable cause" under Code of Civil Procedure section 1038 "is synonymous with the term 'probable cause' in malicious prosecution law."  (*Clark, supra*, 165 Cal.App.4th at p. 183.)  "[P]robable cause to bring an action does not depend upon it being meritorious, as such, but upon it being arguably tenable, i.e., not so completely lacking in apparent merit that no reasonable attorney would have thought the claim tenable."  (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 824.)  "A defendant may not recover section 1038 costs simply because it won a summary judgment or other dispositive motion; victory does not per se indicate lack of reasonable cause.  [Citation.]  That victory is simply the first step."  (*Kobzoff, supra*, 19 Cal.4th at p. 856.)  The County was required to show not merely that it won at the summary judgment stage, but that plaintiff's claim was one that no ""'reasonable attorney would have thought . . . tenable. . . .'"'"  (*Knight v. City of Capitola* (1992) 4 Cal.App.4th 918, 932 (*Knight*), disapproved on another ground by *Reid v. Google, Inc., supra*, 50 Cal.4th at p. 532, fn. 7.)

19

"The standard of review of an award of attorney fees under Code of Civil Procedure section 1038 is both de novo and substantial evidence.  The 'reasonable cause' prong is reviewed de novo, and the 'good faith' prong is reviewed for substantial evidence." (*Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 887-888.)

### B.    *Timeliness of motion*

Plaintiff argues on appeal, as he did in the trial court below, that the County's motion under Code of Civil Procedure section 1038 was untimely because it was not filed until after entry of judgment.  Subdivision (c) of the statute states that "[t]his section shall be applicable only on motion made before the discharge of the jury or entry of judgment . . . ."  (Code Civ. Proc. § 1038, subd. (c).)  Courts have interpreted this statutory language to require the motion be filed "at the earliest practical time 'prior to the discharge of the jury or entry of judgment.'" (*Gamble v. Los Angeles Dept. of Water & Power* (2002) 97 Cal.App.4th 253, 259.)

The trial court found that the County's postjudgment filing of its motion for fees under Code of Civil Procedure section 1038 did not preclude the court from considering the motion because the County had requested fees under section 1038 in its October 23, 2019 notice of motion and motion for summary judgment and had discussed its entitlement to such fees in its accompanying memorandum of points and authorities.  The trial court declined to determine the propriety of the fee request when it granted the summary judgment motion on March 11, 2020.  After judgment was entered on March 24, 2020, the County renewed its request for fees in a postjudgment motion filed pursuant to Code of Civil Procedure section 1038.

20

The trial court was not prohibited from considering the County's motion for fees under Code of Civil Procedure section 1038. The statute does not prohibit a court from considering a postjudgment motion for fees. Plaintiff here had both notice of and the opportunity to dispute the County's asserted entitlement to fees under Code of Civil Procedure section 1038 when opposing the County's summary judgment motion and again in the County's postjudgment section 1038 motion. Because we conclude the trial court was not prohibited from considering the County's postjudgment motion under Code of Civil Procedure section 1038, we address the merits of the County's appeal.

### C.   *Good faith*

There is substantial evidence in the record to support the trial court's determination that plaintiff acted in a good faith belief that there was a "'justifiable controversy under the facts and law.'" (*Kobzoff, supra*, 19 Cal.4th at p. 864.) In a declaration submitted in opposition to the County's motion for attorney fees, plaintiff's counsel stated that based on his 15 years of experience in handling dangerous condition on public property cases, he believed plaintiff's case was meritorious after considering citizen complaints about the crosswalk, the physical conditions of the area, expert opinions, and discovery produced in the action. The trial court found the declaration to be credible, and the court's finding of good faith is supported by substantial evidence.

### D.   *Reasonableness*

The County argues that plaintiff did not have reasonable cause because the allegations of his complaint were at variance with the evidence and because he identified no actual defect in the roadway that caused his accident. Based on our review of the record as a whole, including the declaration of plaintiff's counsel,

we do not conclude as a matter of law that plaintiff lacked reasonable cause in maintaining his action. (*Knight, supra*, 4 Cal.App.4th at p. 932.)

## DISPOSITION

The judgment is affirmed, as is the order denying the motion for attorney fees. Each side is to bear their own costs of appeal.

_____
CHAVEZ, J.

We concur:


_____
LUI, P. J.


_____
HOFFSTADT, J.